# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| IN RE APPLICATION OF: §§§§§§§ <br> GRUPO UNIDOS POR EL CANAL, S.A. | CIVIL ACTION NO. <br> 1:14-MC-00226 |

**AUTORIDAD DEL CANAL DE PANAMA'S
COMPLAINT IN INTERVENTION**

Pursuant to Federal Rule of Civil Procedure 24(c), Intervenor Autoridad Del Canal de Panama files this Complaint in Intervention and would show as follows:

## I. PARTIES

1. Intervenor Autoridad del Canal de Panama ("ACP") is an autonomous legal entity of the Republic of Panama established pursuant to Title XIV of the Constitution of Panama, with principle offices located in Panama City, Panama.

2. Applicant Grupo Unidos por el Canal, S.A. ("GUPCSA") is an incorporated sociedad anónima existing under the laws of Panama, with registered offices in Cocoli, Panama.

3. Respondent CH2M Hill Companies, Ltd. ("CH2M") is an American company, with its principal place of business in Englewood, Colorado, and incorporated under the laws of the State of Delaware.[1]

---

[1] In its application, GUPCSA incorrectly states CH2M's identity as "CH2M HILL." GUPCSA's Appl. at 1; GUPCSA's Mem. in Support of Appl. at 1. CH2M HILL is a trade name. The correct legal description of the entity upon which GUPCSA seeks to serve discovery is CH2M Hill Companies, Ltd. For purposes of brevity, ACP will refer to CH2M Hill Companies, Ltd. as "CH2M" within this complaint.

## II. JURISDICTION & VENUE

4. Although ACP denies the applicability of 28 U.S.C. § 1782, this Court possesses subject matter jurisdiction over this matter because GUPCSA has brought its application pursuant to Section 1782.

5. Exercise of jurisdiction over GUPCSA is appropriate because GUPCSA has subjected itself to the jurisdiction of the U.S. District Court of Colorado by initiating an application under 28 U.S.C. § 1782. Exercise of jurisdiction over CH2M is proper because CH2M's principal place of business is located in Colorado.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because CH2M, as respondent, is a resident within the District Court of Colorado.

## III. INTRODUCTION

7. ACP is a party to the private commercial arbitration for which GUPCSA is seeking discovery. The Court should deny GUPCSA's application pursuant to 28 U.S.C. § 1782 because (1) the proceeding for which GUPCSA seeks discovery is not a foreign or international tribunal, as required by Section 1782; (2) many of the documents are located in Panama and 28 U.S.C. § 1782 cannot be used to obtain documents that are outside the United States; (3) GUPCSA's application is an attempt to circumvent the contractually negotiated and agreed-to discovery rules of that ongoing proceeding; and (4) many of the documents that GUPCSA can legitimately seek are in the contractual custody and control of ACP and can be sought from ACP. ACP seeks to intervene in this Action to oppose GUPCSA's impermissible application and to protect ACP's substantial interests which, as explained below, will be impaired if the court grants GUPCSA's application. For the reasons explained herein, as well as within ACP's motion

to intervene, ACP's motion to intervene should be granted, and GUPCSA's Section 1782 application should be denied.

## IV.  FACTUAL BACKGROUND

8.     ACP is responsible for the operation and management of the Panama Canal.  ACP and GUPCSA are parties to a private commercial arbitration proceeding currently pending in Miami, Florida (the "Miami Arbitration" or "Arbitration").  The Miami Arbitration arises from a dispute related to a project to expand the Panama Canal (the "Canal Project").  In August 2009, ACP entered into a contract for the completion of the Canal Project (the "Contract").  GUPCSA is presently the Contractor under that Contract.  The Contract contains an arbitration clause which provides, in relevant part, that any dispute arising from the Canal Project shall be arbitrated in Miami, under the Rules of Arbitration of the International Chamber of Commerce ("ICC").  Contract, Ex. D, § 20.6(a), (e).[2]  The parties have agreed that the arbitration clause is governed by the U.S. Federal Arbitration Act ("FAA").  *Id.* § 20.6(f).  The Contract also provides that document discovery, among other things, shall be conducted according to the International Bar Association Rules on the Taking of Evidence in International Commercial Arbitration (the "IBA Rules").  *Id.* § 20.6(b).

9.     ACP has a separate contract with CH2M Hill Panama that is not the subject of the Miami Arbitration.  CH2M Hill Panama has contracted with ACP to provide Program Management Services in connection with the Canal Project.  As part of this relationship between ACP and CH2M Hill Panama, ACP has a contractual right to certain confidential documents related to the Project within CH2M Panama's possession.  Invitation to Bid, Ex. F, § 11.2.4.1

---

[2] All references to exhibits within this complaint are in reference to the exhibits attached to ACP's motion to intervene.

("All tangible forms of the Confidential Information . . . shall be the sole property of the ACP, and shall be returned, deleted, erased or destroyed within 7 days upon the ACP's request without [CH2M Hill Panama] or any of the Permitted Persons keeping any copies thereof."). Thus, ACP has a proprietary interest in many of the documents to which GUPCSA is seeking access.

10. On December 28, 2013, GUPCSA, along with several co-claimants, filed a request for arbitration, which commenced the Miami Arbitration. After the Miami Arbitration was commenced, the parties agreed on terms of reference. The terms of reference is an agreement entered into between the parties to the Miami Arbitration which governs the Miami Arbitration. In the terms of reference, the parties reaffirmed that the arbitration agreement and the arbitration will be governed by the FAA and the IBA Rules. Terms of Reference, Ex. G, § 10, ¶ 65. The parties also granted the arbitration panel the power to issue procedural orders and specifically required the panel to issue a procedural timetable. *Id.* § 10, ¶ 67, § 13, ¶ 74. The panel subsequently issued a procedural timetable on August 11, 2014. According to the timetable entered by the Miami Arbitration panel, discovery does not commence until May 15, 2015. Procedural Order No. 1, Ex. H, § 1.1.

11. GUPCSA, as one of the claimants in the Arbitration, has filed the present ex parte application for an order pursuant to 28 U.S.C. § 1782 seeking to compel discovery from CH2M Hill Companies Ltd. ("CH2M") for use in the Miami Arbitration. GUPCSA is asking this Court to force a Colorado company, with an undescribed relationship to CH2M, Panama to produce documents that are at least in part held by CH2M Hill Panama in Panama, for use in the Miami Arbitration.

12.     As explained in more detail below, for numerous reasons GUPCSA's application does not satisfy the requirements necessary for obtaining discovery under Section 1782. Among other flaws with GUPCSA's application, the Miami Arbitration is not a "foreign or international tribunal," as required by Section 1782, GUPCSA seeks to circumvent the IBA Discovery Rules and the authority of the arbitrators in the Arbitration to control discovery by filing the present application in the U.S. federal court system, and GUPCSA acts in breach of an instrument signed as part of the Arbitration which establishes specified rules and a timetable for document discovery in the Arbitration (an agreement required in all ICC arbitrations known as the "terms of reference").[3] Furthermore, GUPCSA seeks access to certain confidential documents, a portion of which ACP has a contractual right to control. ACP, therefore, seeks intervention in this action, both to fully show the inadequacy of GUPCSA's application and to protect its interest in guarding against discovery in this Court that would obviate the authority of the arbitrators to control discovery in the Miami Arbitration and would circumvent the Contract's limitation on document discovery to those available consistent with the IBA Rules and the FAA. For these reasons and those set out below, ACP respectfully requests that the Court deny GUPCSA's Section 1782 application.

## V. ACP'S STATEMENT OF DEFENSES AGAINST GUPC'S APPLICATION

13.     Pursuant to Federal Rule of Civil Procedure 24(c), a motion to intervene must be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

---

[3] In the Contract's terms of reference, the parties to the Arbitration agree that the arbitral panel shall be guided by, but not necessarily bound by, the IBA Discovery Rules. This does not assist GUPCSA, however, as (i) the requirement to use the IBA Discovery Rules, and thus those Rules' limitations on nonparty discovery, remains a feature of the Contract for all purposes; and (ii) there is no evidence that the arbitral panel would be agreeable to permit unilateral discovery from anyone, let alone of documents that are in effect controlled by and sought by the parties before the panel and subject to an agreed and ordered procedural schedule, which includes an express provision for document discovery at a point in the future.

FED. R. CIV. P. 24(c). Given the unique procedural posture of applications made pursuant to 28 U.S.C. § 1782, a complaint setting forth new claims in this case is not in order. Rather, like nonparty movants seeking to intervene in cases to challenge a protective order, ACP has concurrently filed a motion to intervene in the action initiated by GUPCSA under Section 1782. *See, e.g.*, *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990). As such, the types of pleadings provided by Federal Rule of Civil Procedure 7(a) are inapplicable. Instead, ACP files this Complaint in Intervention to set forth the defenses it has against GUPCSA's application under Section 1782.

**A.    GUPCSA Cannot Satisfy the Statutory Requirements Necessary to Succeed on an Application Under 28 U.S.C. § 1782.**

14.    Section 1782 permits a U.S. district court, "upon the application of any interested person," to order another person to "give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a); *In re Michael Wilson & Partners, Ltd.*, 520 F. App'x 736, 738 (10th Cir. 2013). The statutory requirements for obtaining discovery pursuant to § 1782 are met when: "(1) the application is made by . . . 'any interested person'; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the person from whom discovery is sought resides or is found in the district in which the application is filed." *In re Pinchuk*, No. 2:13-CV-00251-ABJ, 2014 WL 348110, at *2 (D. Wyo. Jan. 31, 2014) (citing 28 U.S.C. § 1782). ACP does not contest that GUPCSA is an "interested person" under Section 1782 or that CH2M can be found in the

District of Colorado. However, because the Miami Arbitration is a domestic arbitration[4] not subject to appellate review by United States or foreign courts, it is not a "foreign or international tribunal," as required to maintain an action under Section 1782.

### 1. The Miami Arbitration Is Not a "Tribunal" as Contemplated by Section 1782.

15. Because the Miami Arbitration is a private arbitration conducted within the United States, is governed by the U.S. FAA, and the factual or legal findings of the arbitrators are not subject to judicial review by either a foreign or domestic court, the Miami Arbitration cannot be characterized as a "tribunal" for purposes of Section 1782.

16. The only two U.S. Courts of Appeals to have addressed the issue of whether private arbitrations can be considered "tribunals" under Section 1782—the Second and Fifth Circuits—have held that a private arbitration does not constitute a "tribunal" for purposes of Section 1782. In *Republic of Kazakhstan v. Biedermann International*, the Fifth Circuit, looking to the legislative history of the statute, reasoned that "[t]here is no contemporaneous evidence that Congress contemplated extending § 1782 to the then-novel arena of international commercial arbitration." *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 882 (5th Cir. 1999). Rather, "[r]eferences in the United States Code to 'arbitral tribunals' almost uniformly concern an adjunct of a foreign government or international agency." *Id.* The court expressed concern that, because Section 1782 authorizes broader discovery than what is authorized for domestic arbitrations by the FAA, if Section 1782 were to apply to private arbitrations, the disparity between the discovery a party may take domestically and the discovery

---

[4] Although the Arbitration is "international" within the meaning of 9 U.S.C. § 201, that designation refers to the enforcement of the arbitration clause and any award issued by the arbitrators. However, because the seat of the Arbitration is Miami, it is considered a domestic arbitration for the purposes of 28 U.S.C. § 1782.

available internationally would produce the anomalous result of giving parties to private international arbitrations greater access to discovery in American courts than parties to domestic arbitrations enjoy. *See id.* at 882–83. The court also reasoned that empowering parties in private international arbitrations to seek ancillary discovery through U.S. federal courts could negate arbitration's principal advantage as "a speedy, economical, and effective means of dispute resolution." *Id.* at 883. In 2009, following the Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.*, the Fifth Circuit reaffirmed its position on this issue. *El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 F. App'x 31, 34 (5th Cir. 2009) (per curiam). The Second Circuit, like the Fifth Circuit, has held that a party to a private commercial arbitration conducted under the auspices of the International Chamber of Commerce could not seek a subpoena from a district court pursuant to Section 1782. *Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 188 (2d Cir. 1999). Not a single U.S. Court of Appeals holds differently.

17. Numerous district court cases that have addressed this issue have reached the same conclusions as the Second and Fifth Circuits. *See, e.g.*, *In re Dubey*, 949 F. Supp. 2d 990, 995 (C.D. Cal. 2013) ("[T]he Court . . . finds the reasoning in *National Broadcasting* and *Biedermann* directly on point and persuasive. Both the Second Circuit and Fifth Circuit 'tackled the issue squarely,' considered both legislative history and policy reasons, and resolved the ambiguity against including private arbitrations in § 1782."); *In re Finserve Grp.*, No. 4:11-mc-2044-RBH, 2011 WL 5024264, at *3 (D.S.C. Oct. 20, 2011) ("[T]he Court questions whether the LCIA would be considered to be a 'foreign tribunal' under the statute, as there appears there is no judicial review."); *In re Norfolk S. Corp., Norfolk S. Ry. Co. & Gen. Sec. Ins. Co.*, 626 F.

Supp. 2d 882, 886 (N.D. Ill. 2009) (holding that private arbitrations do not fall within the purview of the statute because they do not have "ultimate reviewability," or "judicial review of the merits of the parties' dispute").

18.   Most applicable for purposes of the Arbitration, in *In re Operadora DB Mexico, S.A. de C.V.,* the U.S. District Court for the Middle District of Florida addressed an issue nearly identical to the present dispute—"whether a private arbitral tribunal . . . constituted under the International Chamber of Commerce International Court of Arbitration . . . qualifies as a foreign or international tribunal" for purposes of § 1782. *In re Operadora DB Mexico, S.A. de C.V.*, No. 6:09-cv-383-Orl-22GJK, 2009 WL 2423138, at *1 (M.D. Fla. Aug. 4, 2009). The court reasoned that the plain language of the statute is ambiguous, and therefore reference to the legislative history and the purpose of the statute was necessary to determine whether Congress intended to include private arbitral proceedings within the statute's scope. *Id.* at *8. After considering the legislative history and purpose of the statute, the court concluded that Congress did not clearly intend to include private arbitral proceedings within the ambit of "foreign or international tribunals," and when Congress used the word "tribunal," it referred solely to governmental entities. *Id.* at *9. The court reasoned: "[T]he absence of any reference to private dispute resolution proceedings such as arbitration strongly suggests that Congress did not consider them in drafting the statute." *Id.*

19.   Those district court decisions that do hold that private arbitrations fall within the scope of Section 1782, including those cited by GUPCSA in its application, can largely be classified into three categories.

9

20.     First, some courts have held that arbitrations conducted by foreign governments or bodies, such as pursuant to an international treaty, clearly fall within the scope of Section 1782. *See, e.g.*, *In re Veiga*, 746 F. Supp. 2d 8, 22–23 (D.D.C. 2010) ("The Court . . . concludes that the . . . Arbitration [pursuant to the Bilateral Investment Treaty between the United States and Ecuador] falls within the metes and bounds of § 1782(a)."); *In re Chevron Corp.*, 709 F. Supp. 2d 283, 291 (S.D.N.Y. 2010) (same); *OSJC Ukrnafta v. Carpatsky Petrol. Corp.*, No. 3:09 MC 265(JBA), 2009 WL 2877156, at *4 (D. Conn. Aug. 27, 2009) ("[A] reasoned distinction can be made between arbitrations such as those conducted by UNCITRAL, 'a body operating under the United Nations and established by its member states,' and purely private arbitrations established by private contract." (alteration in original)); *In re Oxus Gold PLC*, No. 06-82-GEB, 2007 WL 1037387, at *5 (D.N.J. Apr. 2, 2007) (same).

21.     A second line of decisions has relied on the availability of judicial review of the arbitral award by foreign courts. *See, e.g.*, *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1228 (N.D. Ga. 2006) ("Where a body makes adjudicative decisions responsive to a complaint and reviewable in court, it falls within the widely accepted definition of 'tribunal,' the reasoning of *Intel*, and the scope of [the statute], regardless of whether the body is governmental or private.").

22.     Finally, some cases have focused on dicta from the Supreme Court's decision in *Intel*, found in a single footnote, that references "arbitral forums," without regard for the precise nature of the proceeding at issue or the extent of available judicial review. *See, e.g.*, *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 238–40 (D. Mass. 2008); *Comision Ejecutiva Hidroelectrica del Rio Lempa v. Nejapa Power Co.*, No. 08-135-GMS, 2008 WL 4809035, at *1 (D. Del. Oct. 14, 2008); *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 954–56 (D. Minn. 2007). However,

these cases misconstrue *Intel*, given that "the question of whether a private international arbitration tribunal also qualifies as a 'tribunal' under § 1782 was not before the [*Intel*] Court." *El Paso Corp.*, 341 F. App'x at 34.

23.     Unlike every case cited by GUPCSA in support of its application, by filing the present application, GUPCSA seeks discovery under Section 1782 for use in a private arbitration being conducted in the United States, rather than in a foreign country or pursuant to an international treaty with a foreign country.  Moreover, because the Miami Arbitration is governed by the FAA, it will not be subject to the kind of judicial review that has led some district courts to permit Section 1782 discovery.  Accordingly, the Miami Arbitration is not a "tribunal" within the meaning of Section 1782, and GUPCSA's application is therefore fatally defective.

### 2.     The Miami Arbitration Is Not "Foreign or International."

24.     Because the Miami Arbitration is being conducted within the United States, and is governed by the U.S. FAA, it is neither foreign nor international, as required by Section 1782.

25.     The purpose of Section 1782 is to promote international dispute resolution and comity.  *Republic of Ecuador v. Connor*, 708 F.3d 651, 654 (5th Cir. 2013).  Section 1782 was enacted to assist foreign tribunals in obtaining discovery that they would otherwise not have access to and to encourage reciprocity by other nations.  *In re Premises Located at 840 140th Ave. NE*, 634 F.3d 557, 563 (9th Cir. 2011).  Permitting a private arbitration proceeding domestically in the United States, employing the contractually mandated IBA Rules, and with the availability of the discovery provisions of the FAA, would not serve the purpose of Section 1782, as the Miami Arbitration is neither an ongoing international dispute nor does the arbitral

panel need assistance in obtaining discovery of the very documents that are the subject of GUPCSA's request.

26. In *National Broadcasting Co. v. Bear Stearns & Co.*, the Second Circuit held that narrow definitions of "foreign" and "international" should be adopted. *Nat'l Broad. Co.*, 165 F.3d at 191 & n.9. The court held that the mere presence of foreign arbitrators on the panel was insufficient to invoke Section 1782. *Id.* Similarly, at least one U.S. District Court that has been presented with this issue has cast serious doubt on whether an arbitration taking place in Virginia before a panel of American arbitrators, but before the International Chamber of Commerce's International Court of Arbitration, was a "foreign" tribunal for purposes of Section 1782, even though the applicant had asserted as such. *See In re Hanwha Azdel, Inc.*, 979 F. Supp. 2d 178, 180 (D. Mass. 2013).

27. The proceeding on which GUPCSA relies to support its application—the Miami Arbitration—is being conducted domestically and is governed by the U.S. FAA. Accordingly, the Miami Arbitration is clearly not a "foreign or international" tribunal, and for this reason alone, GUPCSA's application should be denied.

### 3. Section 1782 Cannot Be Used to Obtain Documents Located Outside the United States.

28. GUPCSA's requests impermissibly seek the production of documents that are, in part, located outside the United States. Numerous courts have held that Section 1782 does not authorize a district court to order production of documents located in foreign countries. *Four Pillars Enters. v. Avery Dennison Corp.*, 308 F.3d 1075, 1080 (9th Cir. 2002); *In re Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997); *In re Kreke Immobilien KG*, No. 13 Misc. 110(NRB), 2013 WL 5966916, at *4 (S.D.N.Y. Nov. 8, 2013). Because CH2M Hill Panama, which has

participated in the Canal Project, is located in Panama, if the Court were to grant GUPCSA's application, it would almost certainly lead to an intrusive and burdensome requirement for document production in at least one foreign country.

**B.    The Discretionary Factors Counsel Against Granting GUPCSA's Application.**

29.    Even if all statutory requirements are satisfied (and in this case, they are not), whether to permit the requested discovery remains within the discretion of the district court. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004).  District courts consider several discretionary factors when deciding whether to grant a § 1782 application: "(1) whether the party from whom discovery is sought is a participant in a foreign proceeding, or already subject to the jurisdiction of the foreign tribunal; (2) the nature and character of the foreign proceedings; (3) the receptivity of the foreign tribunal to such judicial assistance; (4) whether the request is an attempt to circumvent foreign discovery restrictions; and (5) whether the request is unduly intrusive or burdensome." *In re Pinchuk*, 2014 WL 348110, at *2 (citing *Republic of Ecuador v. Bjorkman*, 801 F. Supp. 2d 1121, 1124 (D. Colo. 2011)); *see also Intel*, 542 U.S. at 264–65.

30.    As to the first (and fourth) factor, GUPCSA conclusorily asserts in its application that it cannot obtain the information it seeks in the present action through discovery mechanisms in the Miami Arbitration because CH2M is not a party to the Miami Arbitration. Appl. at 5. However, the IBA Rules specifically allow for a party to the Miami Arbitration to request discovery of a nonparty to the Arbitration:

> If a Party wishes to obtain the production of Documents from a person or organisation who is not a Party to the arbitration and from whom the Party cannot obtain the Documents on its own, the party may, within the time ordered by the Arbitral Tribunal, ask it

13

> to take whatever steps are legally available to obtain the requested Documents, or seek leave from the Arbitral Tribunal to take such steps itself. The Party shall submit such request to the Arbitral Tribunal and to the other Parties in writing, and the request shall contain the particulars set forth in Article 3.3, as applicable. The Arbitral Tribunal shall decide on this request and shall take, authorize the requesting Party to take, or order any other Party to take, such steps as the Arbitral Tribunal considers appropriate if, in its discretion, it determines that (i) the Documents would be relevant to the case and material to its outcome, (ii) the requirements of Article 3.3, as applicable, have been satisfied, and (iii) none of the reasons for objection set forth in Article 9.2 applies.

IBA Rules on the Taking of Evidence in Int'l Arbitration, Art. 3.9 (2010) (attached hereto as Exhibit E). GUPCSA neither requested that the arbitral panel presiding over the Miami Arbitration take steps to obtain the documents it now seeks, nor did GUPCSA seek leave from the panel to initiate such steps itself. The objective of 28 U.S.C. § 1782 is "to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *In re Pinchuk*, 2014 WL 348110, at *2. Here, because nonparty discovery is available in the Miami Arbitration, GUPCSA does not require this Court's assistance to seek the documents it now seeks of CH2M. Moreover, because ACP has certain contractual rights to documents in CH2M's possession, the panel in the Arbitration can effectively require the production of any such documents by an order on ACP (if they accept GUPCSA's demands for production).

31. No formal discovery has occurred in the Miami Arbitration. GUPCSA has not sought documents directly from ACP as part of the Arbitration, yet now asks this Court to order CH2M to turn over documents that ACP has contractual custody and control over. The preamble to the IBA Rules provides that "[t]he taking of evidence shall be conducted on the principles that

14

each Party shall act in good faith and be entitled to know, reasonably in advance of any Evidentiary Hearing or any fact or merits determination, the evidence on which the other Parties rely." IBA RULES ON THE TAKING OF EVIDENCE IN INT'L ARBITRATION, Preamble § 3 (2010). By seeking to circumvent the Miami Arbitration's discovery rules and by filing an ex parte application in this Court, GUPCSA is not acting in good faith as described by the preamble to the IBA Rules and is avoiding the requirements of the Contract, which governs the Miami Arbitration.

32. Second, the nature of the Miami Arbitration, as described above, is that it is not foreign, nor is it a "tribunal" as contemplated by Section 1782. It is a private, domestic arbitration with discovery rules being ignored on the face of GUPCSA's present application. Permitting a private arbitration proceeding in the United States, with its own contractually mandated IBA Discovery Rules, and with the availability of the discovery provisions of the FAA as well, would not serve the purpose of Section 1782, as the Miami Arbitration is neither an ongoing foreign dispute nor does the arbitral panel need assistance in obtaining discovery.

33. Third, because GUPCSA, by filing the present action, has failed to comply with the FAA and the IBA Discovery Rules governing document production in the Miami Arbitration, there is no indication that the arbitral panel of the Miami Arbitration would be receptive to examining documents that were obtained in violation of that Arbitration's IBA Discovery Rules. GUPCSA does not provide any evidence that the arbitrators presiding over the Miami Arbitration would be receptive to its application. Indeed, the Contract provides for a way to find out how the arbitrators would feel about just that issue, given that the IBA Rules provide that a party (such as GUPCSA) seeking nonparty discovery must submit such a request in writing to the arbitral panel. By

bypassing these discovery provisions of the Contract, GUPCSA is failing to comply with the Contract, casting serious doubt on GUPCSA's ability to satisfy these discretionary factors.

34.     As to the fourth factor, by the plain language of the IBA Rules, which govern document production in the Miami Arbitration, straightforward measures exist for a party to the Miami Arbitration to request both nonparty discovery and discovery between parties. The arbitral panel has promulgated a scheduling order detailing the procedure by which the parties to the Miami Arbitration shall engage in discovery beginning on May 15, 2015. Procedural Order No. 1, Ex. H.  In relevant part, request for production of documents shall occur by May 29, 2015, objections to document requests shall occur by June 9, 2015, replies to the objections of document requests shall occur by June 14, 2015, requests to the arbitral panel for the production of documents shall occur by June 16, 2015, the panel's decision on the parties' requests for document requests shall occur by June 29, 2015, and production of all documents shall occur by July 10, 2015. *Id.* § 1.1. GUPCSA has ignored these required deadlines and the IBA Rules as a whole by filing the present action. As the Fifth Circuit stated when faced with a similar scenario:

> As a creature of contract, both the substance and procedure for arbitration can be agreed upon in advance. The parties may pre-arrange discovery mechanisms directly or by selecting an established forum or body of governing principles in which the conventions of discovery are settled. Resort to § 1782 in the teeth of such agreements suggests a party's attempt to manipulate United States court processes for tactical advantage.

*Biedermann*, 168 F.3d 883; *see also In re Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 108 (D.D.C. 2010) ("[T]he guidelines that [Applicant] proposed and the Tribunal accepted instructed [Applicant] to 'ask [the Tribunal] to take whatever steps are legally available to obtain the requested documents. . . . But by unilaterally filing this petition, [Applicant] has side-stepped

16

these guidelines, and has thus undermined the Tribunal's control over the discovery process." (fourth alteration in original)).  GUPCSA's attempt to circumvent the IBA Discovery Rules governing the Miami Arbitration is evident from the ex parte nature of its application with this Court and its unwillingness to proceed under those discovery rules and the discovery scheduling order which it negotiated for and agreed to.  Accordingly, for this reason, and for the reasons stated supra, the Court should exercise its discretion to deny GUPCSA's application.

## VI.  PRAYER

Wherefore, ACP respectfully requests that it be permitted to intervene in this action, that the Court consider this Complaint as ACP's opposition to GUPCSA's application, that the Court deny in all respects GUPCSA's application, and that ACP have such other relief as it may show itself to be entitled.

Respectfully submitted,

**VINSON & ELKINS LLP**

*s/ Phillip B. Dye, Jr.*
Phillip B. Dye, Jr.
Texas Bar No. 06311500
James Lloyd Loftis
Texas Bar No. 12491210
Matthew C. Hoffman
Texas Bar No. 24068697
Tel.: (713) 758-2048
Fax: (713) 615-5766
pdye@velaw.com
jloftis@velaw.com
mhoffman@velaw.com
1001 Fannin Street, Suite 2500
Houston, Texas 77002

**ATTORNEYS FOR AUTORIDAD DEL CANAL DE PANAMA**

# CERTIFICATE OF SERVICE

      I hereby certify that on October 30, 2014, the foregoing Motion for Leave to Intervene was served on the following counsel of record via ECF notification:

Francis A. Vasquez, Jr.
White & Case, LLP
701 13th Street N.W.
Washington, DC 20005
Tel.: 202-626-3600
Fax: 202-639-9355
fvasquez@whitecase.com

Tom McNamara
Davis Graham & Stubbs LLP
1550 17th Street, Suite 500
Denver, CO 80202
Tel.: 303-892-7349
Fax: 303-893-1379
Tom.McNamara@dgslaw.com

                                                *s/ Phillip B. Dye, Jr.*_____
                                                Phillip B. Dye, Jr.