IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–mc–00226–MSK–KMT

In Re Application of

GRUPO UNIDOS POR EL CANAL, S.A.,

To Obtain Discovery for Use in an International Proceeding.

---

## ORDER

---

The controversy underlying this request for discovery in aide of foreign litigation involves the expansion of the Panama Canal. Autoridad del Canal de Panama, also known as the Panama Canal Authority ("ACP") is responsible for the operation and management of the Panama Canal. In August 2009, ACP entered into several contracts for the completion of the Panama Canal expansion, referred to here as the Canal Project, which anticipated the construction of a third set of locks for the canal.

Before the court is Grupo Unidos por el Canal, S.A.'s, ("GUPC") "Ex Parte Application for an Order Under 28 U.S.C. § 1782 to Obtain Discovery from Ch2m Hill[1] for Use in an International Proceeding" [Doc. No. 1] ("§ 1782 App.") filed October 1, 2014. GUPC is a Panama-based company and is the contractor for the Canal Project pursuant to a contract with ACP. ACP's "Notice of Opposition to GUPC's Ex Parte Application for an Order Under 28 U.S.C. § 1782 and Notice of Intent to Move to Intervene" [Doc. No. 4] was filed on October 10, 2014 and it's "Motion for Leave to Intervene in the 28 U.S.C. § 1782 Action Initiated by Grupo

---

[1] ACP has a contract with CH2M HILL Panama, S. de R.L. ("CH2M Hill-Panama") to provide Program Management Services in connection with the Canal Project. (Intervention Mot. at 3.)

Unidos Por El Canal, S.A." [Doc. No. 8] ("Intervention Mot.") was filed on October 30, 2014.

ACP's Complaint in Intervention [Doc. No. 8-1] was allowed on January 13, 2015.  (Hearing

Minutes, [Doc. No. 22].)  Along the way, CH2M Hill Companies, Ltd. ("CH2M Hill-US") also

filed its own opposition to the discovery requested by GUPC.  [Doc. No. 10].  A hearing

addressing all matters was conducted on January 13, 2015.

### Background

Applicant GUPC alleges that it began work on the Canal Project in 2009 and "[f]rom the

outset, . . . , ACP substantially failed to perform its obligations in numerous respects, including,

*inter alia,* by concealing and withholding critical information regarding the true nature of the

existing conditions at the Project and the status of other aspects of the Panama Canal expansion."

(§ 1782 App. ¶ 4.)  GUPC alleges that "ACP's material misrepresentations and other breaches

have resulted in delays, cost overruns, and other problems relating to the Project."  (*Id.*)

The Canal Project contract between ACP and GUPC contains an arbitration clause which

provides, in relevant part, that any dispute arising from the Canal Project shall be arbitrated in

Miami, Florida, USA, under the Rules of Arbitration of the International Chamber of Commerce

("ICC").  (Intervention Mot. at 2.)  ACP and GUPC agree that the arbitration clause in the

ACP/GUPC contract is governed by the U.S. Federal Arbitration Act ("FAA").  (Intervention

Mot. at 3.)  Further, the parties agree that discovery shall be conducted according to the

International Bar Association Rules on the Taking of Evidence in International Commercial

Arbitration (the "IBA Rules"), although the parties disagree over whether the IBA Rules are

mandatory or permissive.

On December 28, 2013, GUPC, along with several co-claimants, filed a request for arbitration, which through the ICC commenced the now-pending arbitration proceeding.  (§ 1782 App. ¶ 5.)  It is this Miami-based arbitration proceeding that is alleged to be the "international proceeding" supporting GUPC's Section 1782 request.

GUPC seeks discovery from CH2M Hill-US in the United States to support its allegations against ACP in the arbitration proceedings.  CH2M HILL-US asserts that it is not the Project Manager for the Panama Canal expansion project and therefore does not possess the requested documents.  (See Opposition to Ex Parte Application for Order Under 28 U.S.C. § 1782" ("CH2M Hill Opp.") [Doc. No. 10] at 3.)  Neither CH2M HILL-Panama nor CH2M HILL-US are parties to the arbitration proceedings.  (CH2M Hill Opp. at 2-3.)  It does not appear disputed, at least for purposes of this § 1782 Action, that as part of the relationship between ACP and CH2M Hill-Panama, ACP has a contractual right to certain confidential documents related to the Canal Project that are within CH2M Hill-Panama's possession.  *Id.*

After the arbitration proceeding was commenced, the parties agreed on Terms of Reference - an agreement entered into between the parties to the arbitration that governs the arbitration procedure.  (Intervention Mot., Ex. G.)  That document reaffirmed that the arbitration will be governed by the FAA and the IBA Rules.  (*Id*.)  The parties also granted the self-selected panel of arbitrators the power to issue procedural orders and to set a procedural timetable.  (*Id.* § 10, ¶ 67; § 13, ¶ 74.)  Such a timetable was issued by the arbitration panel. (*Id*., Ex. H, Procedural Order No. 1.)

Pursuant to 28 U.S.C. § 1782, GUPC now seeks documents from CH2M Hill-US for use in the arbitration proceedings.  Both CH2M Hill-US and ACP object to the Application on

various grounds, including: "(1) the Miami Arbitration is a private commercial arbitration and not a 'tribunal' within the ambit of Section 1782; (2) the Miami Arbitration is not a 'foreign or international tribunal' within the meaning of Section 1782 since the seat of the arbitration is in the United States; (3) the Proposed Subpoena improperly attempts to obtain documents located abroad including from a foreign corporate entity (CH2M HILL-Panama) that is separate from CH2M HILL-US; (4) the Proposed Subpoena is unduly burdensome and intrusive; and (5) the Proposed Subpoena appears to be an attempt to circumvent contractual procedural and discovery limitations in the Miami Arbitration."  (CH2M Hill Opp. at 3-4.)

### Legal Standard

Title 28 U.S.C. § 1782 provides, in relevant part, that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, . . . ." 28 U.S.C. § 1782.  The primary purpose of § 1782 is to provide judicial assistance through United States federal courts in gathering evidence for use in a proceeding in a foreign or international tribunal.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  A petitioner seeking discovery for proceedings in a foreign jurisdiction pursuant to § 1782, must meet the following four requirements:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Application of Michael Wilson & Partners, Ltd.,* Case No. 06-cv-02575-MSK-PAC, 2007 WL 22221438, at *2 (D. Colo. July 27, 2007) (quoting *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir.2007)).

To the extent the Petitioner is able to meet the threshold considerations to obtain discovery pursuant to the statute, the court must further consider whether certain discretionary facts weigh in favor of granting the application and the requested discovery. These factors include: (1) whether the party from whom discovery is sought is a participant in the foreign proceeding, or already subject to the jurisdiction of the foreign tribunal; (2) the nature and character of the foreign proceedings; (3) the receptivity of the foreign tribunal to such judicial assistance; (4) whether the request is an attempt to circumvent foreign discovery restrictions; and (5) whether the requests are unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-265.

### Analysis

#### A.   Statutory Threshold

The parties do not dispute that Petitioner has satisfactorily met the first and second requirements to proceed under Section 1782. GUPC, the Petitioner, is a party to the Canal Project arbitration proceedings and therefore qualifies as an interested party. Further, GUPC seeks documentary evidence that it claims it will attempt to use in the arbitration proceedings. It is the third and fourth requirements that are at issue here.

ACP claims that the Canal Project arbitration is neither "international" nor is it a "tribunal" within the meaning of § 1782. CH2M HILL-US agrees, and also disputes that the party who has possession of the documents sought by GUPC, CH2M HILL-Panama, resides or can be found in the district of the district court ruling on the application for assistance.

5

#### 1.    Tribunal

##### a.    ICC Proceedings

Petitioner includes the Declaration of Anne Marie Whitesell, currently a Professor at Georgetown University Law Center and formerly Secretary General of the ICC, in support of its request for application of § 1782 to ICC proceedings generally.  (Reply, Vasquez Declaration [Doc. No. 13-1], Ex. 1 [Doc. No. 13-2], Declaration of Anne Marie Whitesell) (hereinafter "Whitesell Decl.").  ACP moves to strike the Whitesell Declaration "[b]ecause the Whitesell declaration is impermissibly offered for the sole purpose of providing legal conclusions."

Federal Rule of Evidence 702(a) does not permit an expert witness to opine on conclusions of law, such as statutory interpretation, which are the sole province of the Court. The Tenth Circuit has cautioned that "[i]n no instance can a witness be permitted to define the law of the case."  *Maxwell v. Kerr-McGee Chem. Worldwide, LLC*, No. 04-cv-01224-PSF-CBS, 2006 WL 2053534, at *3 (D. Colo. July 21, 2006) ("While an expert may provide an opinion to help a judge or jury understand a particular fact, he may not give testimony stating ultimate legal conclusions based on those facts.") (citing *Specht v. Jensen*, 853 F.2d 805, 809-10 (10th Cir. 1988.)  *See also Peiker Acustic, Inc. v. Kennedy*, No. 10-cv-02083-REB-MJW, 2012 WL 975883, at *2 (D. Colo. Mar. 21, 2012) ("[O]ur system reserves to the trial judge the role of adjudicating the law . . . .").

The Whitesell Declaration mixes both factual information, about which her expert opinion is helpful, with blatant opinions that are well beyond those allowable concerning statutory interpretation of § 1782.  Nonetheless, since this information is not being presented to a jury at this time, this court is able to parse between improper legal opinion and helpful factual

information without danger of undue influence on disallowed opinion testimony.  For instance, Paragraphs 21 – 26 of the Whitesell Declaration present nothing but pure legal argument supporting a position that an arbitration conducted through application of ICC Rules is an international tribunal pursuant to § 1782.  These paragraphs are not proper fodder for expert opinion and as such will be ignored by the court.  Whitesell, however, is qualified to explain to the court how ICC arbitration is conducted and the process for presenting a case for ICC-governed arbitration.  (Whitesell Curriculum Vitae [Doc. No. 13-2].)

Therefore, the court denies "Autoridad Del Canal De Panama's Motion to Strike the Declaration of Anne Marie Whitesell" [Doc. No. 15] for purposes of this proceeding only, with the caveat that the court will ignore the liberal insertion of improper opinion on issues that must be left to the province of this court to decide.

Prof. Whitesell states that "[t]he ICC was founded in 1919, and is a worldwide organization with members and regional offices in 130 countries which offers rules, codes and practical services to facilitate international trade and commerce.  (Whitesell Decl. ¶ 5.) The parties may voluntarily select arbitration pursuant to the ICC Rules when they enter into contracts with one another.  (*Id*.)  When those parties have a dispute which they believe should be submitted to arbitration, the ICC Court takes over administration of the controversy. (Whitesell Decl. ¶ 6.)  According to Professor Whitesell, "[t]he prime function of the ICC Court is to ensure the application of the ICC Rules by the arbitral tribunals."  (*Id.*)  Whitesell states that the "ICC Court seeks to ensure consistency in the application of the ICC Rules from dispute to dispute, no matter the identity of the parties or the arbitral tribunals."  (*Id.*)  With this explanation, then, the court concludes that the title "ICC Court" is somewhat of a misnomer as

the body is not a court at all in typical parlance – it is simply a compendium of impartially

administered rules and procedures which are designed to ensure that parties to private arbitration

agreements abide by pre-authorized rules of proceeding through arbitration.  In other words, the

ICC Court ensures that the parties get the benefit of their private bargain concerning the conduct

of any arbitration should disputes arise during the contractual relationship.

Prof. Whitesell continues by explaining that after the ICC Court is alerted to the decision

of the parties to engage in arbitration, the parties then pick one or more arbitrators to hear and

decide the matter.  There are certain rules about the arbitrators' independence and impartiality.

(*Id.* ¶ 7(ii).)  Once the arbitrator(s) are selected, the arbitrators and the parties then privately

agree on the rules that will control the arbitration and a timetable for the conduct of the

arbitration.  (*Id.* ¶ 7(iii).)  This agreement is called the Terms of Reference.  (*Id.*)  Whitesell

explains that this privately constituted panel of arbitrators has authority under the ICC Rules to

oversee the taking of evidence and conducting hearings as controlled by the agreed upon Terms

of Reference through Procedural Orders issued by the selected arbitrator or panel of arbitrators.

(*Id.* ¶ 9.)

Finally, as set forth by Prof. Whitesell, Article 34(6) of the ICC Rules states

"Every award shall be binding on the parties.  By submitting the dispute to arbitration
under the Rules, the parties undertake to carry out any award without delay and shall be
deemed to have waived their right to any form of recourse insofar as such waiver can
validly be made."

(*Id.* ¶ 17.)

In general, unless otherwise part of the contract, the scope of judicial review of an

arbitrator's judgment where matters of contract rights are concerned is limited to a threshold

determination of the arbitrability of the dispute.  *U.S. Bulk Carriers, Inc. v. Arguelles,* 400 U.S.

351, 362-363 (1971).  Judicial review of an arbitration award does not include review of legal or

factual conclusions.  Instead, the arbitration award is generally enforceable internationally, and

may only be set aside in extremely limited circumstances, such as for a lack of jurisdiction, a

failure of the tribunal to abide by its mandate, or a violation of due process or international

public policy.  *See* New York Convention on the Enforcement and Recognition of Foreign

Arbitral Awards, art. V, Jun. 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 30; *In re Application by

Rhodianyl S.A.S.*, No. 11-1026-JTM, 2011 U.S. Dist. LEXIS 72918, at *50 (D. Kan. Mar. 25,

2011).

There are several areas, therefore, where ICC-guided private arbitration stands in stark

contrast to judicially-resolved disputes.  While parties have some control over judicial forum and

venue by virtue of their filing decision, such control is a far cry from the ability to pick the situs

of the resolution body irrespective of forum/venue rules and to outright select the individuals

who will preside over and resolve the dispute.  Parties to a judicial action cannot choose their

judge nor can they **selectively** apply Rules of Procedure or Evidence to guide the process.

Additionally, judicial decisions are subject to immediate and comprehensive appellate review.

Invoking a private system to provide consistency of arbitration though private agreement

undoubtedly provides comfort to those independent, private parties that they will be treated fairly

in private arbitration and provides incentive to those parties to contractually agree to arbitrate

disputes between them.  As noted by the Supreme Court, "[i]n bilateral arbitration, parties forgo

the procedural rigor and appellate review of the courts in order to realize the benefits of private

dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert

adjudicators to resolve specialized disputes." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct.

1740, 1751 (2011).  However, simply providing for a set of voluntarily agreed-upon uniform rules of procedure, selectively applied by agreement of the parties, does not turn a private arbitration into an administrative or quasi-judicial proceeding.  This court finds that the ICC proceedings between ACP and GUPC were privately bargained for as a part of the contract entered into by those private parties.  Therefore, the ICC arbitration is privately contracted and is neither an administrative nor quasi-judicial proceeding.

> **b.**    ***Applicability of Section 1782 to Private Arbitration***

In recent years courts have split over whether purely private, contractually bargained for arbitrations, are qualified as "foreign or international tribunals" allowing for § 1782 assistance in the United States.

A number of courts have found that § 1782 does not apply to private commercial arbitrations.  See *In re Dubey*, 949 F. Supp. 2d  990, 993-995 (C.D. Cal. 2013); *El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 F. App'x 31, 34 (5th Cir.2009) (affirming its holding in *Biedermann* and finding that none of the concerns regarding the application of § 1782 to private international arbitrations were at issue or considered in *Intel*); *In re Arbitration in London, England*, 626 F. Supp. 2d 882, 886 (N.D. Ill. 2009) (§ 1782 applied to state-sponsored arbitral bodies that were subject to reviewability, and private arbitration was not included.)*; In re Operadora DB Mex., S.A. de C.V.*, *id.*; *La Comision Ejecutiva Hidroelecctrica Del Rio v. El Paso Corp.*, 617 F. Supp. 2d 481, 485 (S.D. Tex. 2008); *Rhodianyl*, 2011 U.S. Dist. LEXIS 72918, at *36 (Because the ICC Panel's authority derives from the parties' agreement, its purpose is fundamentally different than that of a governmental or state-sponsored proceeding.")

Some courts have held, however, that the Supreme Court's ruling in *Intel* opened the § 1782 door to purely private arbitrations.  Petitioner cites and the court has reviewed several post-*Intel* lower-court decisions finding that an international arbitral body qualifies as a "foreign or international tribunal" within the meaning of § 1782.  (§ 1782 App. at 12–13).  *See Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc*., 685 F.3d 987, 996–97 (11th Cir. 2012) overruled on other grounds by *Application of Consorcia Ecuatoriano de Telecommunicaciones S.A.*, 747 F.3d 1262, 1270 (11th Cir. 2014) (although *Intel* did not specifically decide whether a private arbitral tribunal falls under the statute, pending Ecuador arbitration fell within *Intel*'s broad functional construction of "tribunal"; circuit declines to definitively rule on this issue and decided on other grounds.); *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 240 (D. Mass. 2008);  *In re Hallmark Capital Corp*., 534 F. Supp. 2d 951, 952 (D. Minn. 2007); *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1222 (N.D. Ga. 2006).  Those holdings are most often based on a broad interpretation of a citation within *Intel* to an article written by Hans Smit where he defines tribunal as: "[t]he term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional, civil, commercial, criminal, and administrative courts."  See *Intel*, at 258; Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 SYRACUSE J. INT'L L. & COM. 1, 5–6 (1998).

Unfortunately, the Tenth Circuit has yet to weigh in on this exact topic.

Prior to the Supreme Court's decision in *Intel*, both the Second and Fifth Circuits had, in no uncertain terms, held that § 1782 categorically cannot be invoked to obtain discovery in the United States when the beneficiary forum is a privately contracted arbitration proceeding.  In

*National Broadcasting Co. v. Bear Sterns & Co.*, 165 F.3d 184, 188–91 (2d Cir. 1999), the

Second Circuit explored the legislative history underlying § 1782 to determine whether private

arbitral panels are included in the term "foreign or international tribunals."  It concluded that

"there is no indication that Congress intended for the [statute] to reach private international

tribunals," and this "silence with respect to private tribunals is especially telling because . . . a

significant congressional expansion of American judicial assistance to international arbitral

panels created exclusively by private parties would not have been lightly undertaken by

Congress without at least a mention of this legislative intention."  *Id.* at 190 (citing H.R. Rep.

No. 88–1052, at 9 (1963); S. Rep. No. 88–1580, at 3788–89 (1964)).  The court explained that,

while Congress expanded the scope of § 1782 in 1964 with the language "foreign or international

tribunal," it did not contemplate that this extended beyond governmental adjudicatory bodies.  *Id.*

at 189.  Moreover, the Second Circuit reasoned that policy considerations reinforced its

conclusion because "broad discovery in proceedings before 'foreign or international' private

arbitrators would stand in stark contrast to the limited evidence gathering provided in [Section 7

of the Federal Arbitration Act] for proceedings before domestic arbitration panels."  *Id.* at 191.

In this case, like *NBC*, the parties have agreed to proceed under the FAA.

    In *Republic of Kazakhstan v. Biedermann Int'l,* 168 F.3d 880, 883 (5th Cir.1999), the

Fifth Circuit came to the same conclusion, noting that "[e]mpowering arbitrators or, worse, the

parties, in private international disputes to seek ancillary discovery through the federal courts

does not benefit the arbitration process.  Arbitration is intended as a speedy, economical, and

effective means of dispute resolution."  *Id.*

Subsequent to these two decisions, in 2004, the Supreme Court rendered its decision in *Intel*.   In *Intel*, the court examined a body known as the Directorate–General for Competition of the European Commission ("D-G"), the "European Union's primary antitrust law enforcer" to determine if the D-G was a tribunal within the meaning of § 1782.  542 U.S. at 250.  The D-G is, on its face, more akin to an administrative agency in its duties to enforce antitrust laws in Europe than is any privately constituted arbitrator or arbitration panel.  In making its findings, the *Intel* court examined the function and procedures of the D-G, ultimately finding that its role as a first-instance decision-maker, its authority to determine liability and impose penalties, its ability make a final disposition, and also the judicial reviewability of its final decisions were key factors in holding that D-G would be included as an international tribunal under § 1782(a)'s ambit.  *Id*. at 258, 255 n. 9.  *See also Rhodianyl*, 2011 U.S. Dist. LEXIS 72918, at *21 (after extensive review of case law and legislative history, the court noted that the Supreme Court, in dealing with the D-G, found that the D-G had "inherent governmental nature" which qualified it as an international tribunal.)

Of primary importance to this court is what *Intel* did <u>not</u> consider, to wit; whether § 1782 could be invoked if the tribunal was private arbitration agreed to contractually by private parties,[2] as opposed to being conducted by a quasi-judicial body enforcing public interests.  The Supreme Court specifically held that the D-G was in charge of enforcing antitrust law – clearly a public-interest function.  By contrast, this case involves a dispute over who should pay for cost overruns under a construction contract that provides that the parties will resolve disputes by

---

[2] In this case, one of the **parties** is a quasi-governmental body, however it entered into private contractual relationships regarding the Canal Project.  The issue herein is whether the **tribunal**, rather than a party, is a quasi-governmental decision-making body.

private arbitration, not court action.  The fact that this construction contract is one of the largest

in the world does not alter the basic character of the underlying dispute.  The Supreme Court in

*Intel* simply "did not have cause to address any distinctions between private or quasi-

governmental entities for purposes of section 1782, because there was no non-governmental or

nonstate-sponsored body at issue in that case."  *Ex rel Application of Winning (HK) Shipping Co.*

*Lt.,* No. 09-22659-MC, 2010 WL 1796579, at *7 (S.D. Fla. Apr. 30, 2010).

　　　Further, the Court in *Intel* did not specifically disapprove of, or even mention, the circuit

court rulings in *Biedermann* or *NBC*, both of which had previously held that § 1782 did not apply

to private arbitrations.  It is completely implausible that the Supreme Court would have, in a

parenthetical quotation supporting an unrelated proposition involving an quasi-judicial

governmental body, expanded § 1782 to permit discovery assistance in private arbitral

proceedings and reverse the only two circuits addressing this issue *sub silentio*, without even

acknowledging the existence of the circuit precedent.  *See In re Operadora DB Mex., S.A. de*

*C.V.*, No. 6:09-cv-383-Orl-22GJK, 2009 WL 2423138, at *12 (M.D. Fla. Aug. 4, 2009); *cf.*

*Elizabeth Blackwell Health Center for Women v. Knoll*, 61 F.3d 170, 194 (3d. Cir. 1995) (if the

Supreme Court intends to make a sweeping change in legal jurisprudence, it will do so explicitly,

not *sub silentio*); *In Re Application of Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 955 (D.

Minn. 2007).  *See also, Rhodianyl*, 2011 U.S. Dist. LEXIS 72918, at *49 ("Congress would not

have intended such a sweeping interpretation of § 1782, where the necessary result would be a

contradiction of another strong policy, encouraging the use of arbitration.")  This court agrees

with the Kansas court that, "[i]nterpreting § 1782 to apply to voluntary, private international

arbitrations would be a body blow to such arbitration" and "would create a tremendous

disincentive to engage in such arbitration . . . ."  *Rhodianyl*, 2011 U.S. Dist. LEXIS 72918, at *49.

After reviewing *Intel* and the relevant cases, this court finds that a private arbitration does not fall within the meaning of "foreign or international tribunal" under § 1782.  A "reasoned distinction" can be made between purely private arbitrations established by private contract and matters being adjudicated by state-sponsored adjudicatory bodies of the type presented to the Supreme Court in *Intel*.  See *Arbitration in London,* 626 F.Supp.2d at 885; *Operadora*, 2009 WL 2423138, at *11 ("Because the ICC Panel's authority derives from the parties' agreement, its purpose is fundamentally different than that of a governmental or state-sponsored proceeding."); *cf. In re Oxus Gold PLC*, Misc. No. 06-82-GEB, 2007 WL 1037387, at *5 (D.N.J. Apr. 2, 2007) (an arbitration administered under the Arbitration Rules of the United Nations Commission on International Trade Law ("UNCITRAL") pursuant to a Bilateral Investment Treaty was an "international or foreign tribunal" because it was authorized by sovereign government entities.) For these reasons, the Court finds the arguments for a broad interpretation of *Intel*, as laid out in *Babcock, Hallmark,* and *Roz Trading*, unconvincing.  *See Dubey*, 949 F. Supp. 2d at 994-995; *Operadora,* 2009 WL 2423138, at *11.  This court finds that those cases relied too heavily on the Supreme Court's inclusion of the phrase "arbitral panel" in a parenthetical quotation and a definition in one treatise which would make sweeping changes to the jurisprudence surrounding § 1782 not presented squarely to the Supreme Court in its case.

Instead, this court finds the reasoning in *National Broadcasting Company* and *Biedermann,* and more recently in *Dubey*, to be directly on point and persuasive.   Both the Second Circuit and Fifth Circuit "tackled the issue squarely," considered both legislative history

and policy reasons, and resolved the ambiguity against including private arbitrations in § 1782. *La Comision*, 617 F. Supp. 2d at 486; *Operadora*, 2009 WL 2423138, at *11 ("*NBC* and *Biedermann* examined these fundamental differences in detail, finding that proceedings that are the product of contractual agreements to resolve disputes are functionally different than, and often opposed to, state-sponsored proceedings."). The Court is convinced by the legislative history and policy arguments that construing § 1782 to apply to private contractual arbitrations would defeat the timeliness and cost-effectiveness of arbitration, and would place a heavy burden on the federal courts to determine discovery requests. See *Rhodianyl,* 2011 U.S. Dist. LEXIS 72918, at *49.

Thus, although the Supreme Court may ultimately determine that § 1782 should encompass all private arbitrations, this court finds that such a conclusion is not compelled by the holding in *Intel.* Rather, *Intel* suggests that courts should examine the nature of the arbitral body at issue to determine whether it functions as a "tribunal" for purposes of § 1782. In this case, this court finds the Miami based arbitration between GUPC and ACP is not a tribunal as defined in § 1782.

### 2.    *International*

The parties also dispute whether the arbitration here is "international" for purposes of § 1782. This court is also not convinced that it is, at least as that term is understood in the context of a § 1782 discovery request. Petitioner argues that the matter, although being conducted in Miami, Florida, is foreign and international. In support, GUPC argues that none of the parties to the ICC Arbitration are U.S. citizens and the subject matter of the proceeding concerns a dispute over a project located in Panama, involving construction on Panamanian land,

pursuant to a contract governed by Panamanian law, with performance in Panama. ("GUPC's Reply to CH2M HILL's Opposition to Ex Parte Application for Order under 28 U.S.C. § 1782" [Doc. No. 13] at 3-4.) GUPC argues, "[t]he substantive law applied is Panamanian law; the FAA only supplies the procedural law" and claims that "[t]he procedural rules are international." (*Id.*) Further, GUPC argues that "the Tribunal consists of three international arbitrators from England, Spain, and Belgium." (*Id.* at 4.)

Because the court finds that this private arbitration is not a "tribunal" under § 1782, it is not necessary to reach the question of whether the private arbitration here is "international" within the meaning of § 1782. However, the court notes that all of the cases discussed in the previous section, whether finding for or against inclusion of private arbitration within § 1782, addressed arbitration held **in** a foreign country. See *Arbitration in London*, 626 F. Supp. 2d at 883 (London arbitration); *Operadora,* 2009 WL 2423138, at *1 (Mexico arbitration conducted under the International Chamber of Commerce ("ICC") Court of Arbitration); *La Comision*, 617 F. Supp. 2d at 482 (foreign arbitration pending in Switzerland); *Babcock*, 583 F. Supp. 2d at 236 (potential German arbitration before an ICC panel); *Hallmark*, 534 F. Supp. 2d at 952 (Israeli arbitration proceeding); *Roz Trading*, 469 F. Supp. 2d at 1222 (foreign arbitration before International Arbitral Centre in Austria); *Oxus Gold*, 2007 WL 1037387, at *1 *996 (arbitration between United Kingdom and Kyrgyz Republic nationals pursuant to UNCITRAL); *Winning (HK) Shipping*, 2010 WL 1796579, at *1 (London maritime arbitration); *In re Finserve Grp., Ltd.,* No. CA 4:11-MC-2044-RBH, 2011 WL 5024264, at *1 (D.S.C. Oct. 20, 2011)(London Court of International Arbitration); *Consorcio Ecuatoriano*, 685 F.3d at 989 (foreign arbitration in Ecuador); *N.B.C.*, 165 F.3d at 185 (arbitration proceeding in Mexico); *Biedermann*, 168 F.3d

at 881 (proceeding before Arbitration Institute of the Stockholm Chamber of Commerce); *Ukrnafta v. Carpatsky Petroleum Corp.*, (No. 3:09 MC 265 (JBA), 2009 WL 2877156, at *1 (D. Conn. Aug. 27, 2009). *But see Industrial Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1441 (11th Cir. 1998) (arbitral award granted to a foreign corporation by an arbitral panel sitting in the United States and applying American federal or state law was not considered a domestic award for purposes of invocation of the New York Convention.)

The only case with facts similar to this one is *In re Dubey*, where the alleged international arbitration supporting a § 1782 discovery request was to be held in Los Angeles, California. 949 F. Supp. 2d at 993. In that case, the court declined to rule on whether a proceeding in the United States could be "international" or "foreign" under any circumstances, because, like here, the private arbitration was not covered under § 1782's rubric. This court agrees that not reaching this secondary issue is the prudent course, and likewise will make no finding on whether the ICC proceeding in this case is "international" for purposes of § 1782 at this time.

### 3.    *Location of Documents and Other Evidence Sought*

CH2M Hill-US argues that GUPC seeks documents which are in the possession of a subsidiary company and which are located in Panama, not in the United States. Courts routinely hold that § 1782 does not authorize a district court to order production of documents "located in" foreign countries. *Four Pillars Enters. v. Avery Dennison Corp.*, 308 F.3d 1075, 1080 (9th Cir. 2002); *In re Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997); *In re Kreke Immobilien KG*, No. 13 Misc. 110(NRB), 2013 WL 5966916, at *4 (S.D.N.Y. Nov. 8, 2013).

In today's world, however, cyber-location must be considered by any court. Although physical documents may be located out of the United States, CH2M Hill-US does not dispute

that it has the ability to electronically retrieve documents which might technically be in the possession of its foreign subsidiary.

Mr. Kawanabe, counsel for CH2M Hill-US, represented at the hearing before this court that there were an estimated 89 boxes worth of documents physically residing in the offices of CH2M Hill-Panama, in Panama.  (Jan. 13, 2015 Hrg. Tr. [Doc. No. 23] at 50.)  Further he represented that

> there are documents that are in different locales with certain people that worked with CH Panama and that's why they're in different locations.  So those are physical documents as well.  Certainly there are electronic documents that were put on a server.  And I do not deny that the parent company has access to some of those, . . . .

*Id*.  In *Kreke Immobilien,* the court considered an argument by a requestor that "given the electronic data storage practices of modern businesses, there is reason to believe that the 'great bulk' of the documents requested could be accessed just as easily from [the location of a parent company in the United States] as from anywhere else in the world."  2013 WL 5966916, at *3. The non-party to the foreign litigation from whom discovery was sought countered that to allow such discovery on the basis of mere cloud-based or server access would "render U.S. federal courts 'clearinghouses' for global litigation."  *Id.*  After weighing various cases the *Kreke* court found

> the bulk of authority . . . suggests that a § 1782 respondent cannot be compelled to produce documents located abroad.  Given that this case arose out of conduct that took place in Germany, that the parties are all located in Germany, that all physical documents are in Germany, and that all electronic documents are accessible just as easily from Germany as from Deutsche Bank's offices in New York, the connection to the United States is slight at best and the likelihood of interfering with [foreign] discovery policy is substantial.

*Id.* at *4 (citing *In re Godfrey*, 526 F. Supp. 2d 417, 423-24 (S.D.N.Y. 2007)) (internal citations omitted.)

On its face § 1782 does not limit its discovery power to documents located in the United States.  Nevertheless, there is reason to think that Congress intended to reach only evidence located within the United States.  *Kreke,* 2013 WL 5966916, at *4 (citing *In re Sarrio, S .A.*, 119 F.3d 143, 147 (2d Cir. 1997)) (circuit court did not conclusively reach the lower court's decision that discovery under § 1782 may reach only evidence located in the United States.); *Kestrel Coal Pty. Ltd. v. Joy Global, Inc.*, 362 F.3d 401, 404 (7th Cir. 2004) (same concerning documents in the custody of Joy Global's foreign subsidiaries, which are not parties to the underlying § 1782 proceeding.)

This court agrees with the logic and conclusions of *Kreke* and finds that, even if the ICC arbitration proceedings were an appropriate international tribunal under § 1782, it would be outside the jurisdictional reach of the statute to compel CH2M Hill-US to produce the documents that are physically in Panama, regarding conduct in Panama concerning construction on the Panama Canal, and where electronic documents are accessible just as easily in Panama as from the parent company in the United States.  Therefore the Petitioner's application should be denied on this basis as well.

In sum, Petitioner has not shown that its application meets the statutory requirements for invocation of § 1782.

**B.     *Intel Factors***

Even if the court were to have found that the statutory factors discussed *supra* had been fully satisfied, this court would then consider whether certain discretionary factors weigh in

favor of granting the application and the requested discovery, as set forth at page 4, *supra*. *Intel,* 542 U.S. at 264-265.

"Once the statutory requirements are met, 'a district court is free to grant discovery in its discretion.'" *Brandi–Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 80 (2d Cir. 2012) (quoting *Schmitz v. Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 83–84 (2d Cir. 2004).); *see also In re Edelman,* 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a) . . . ."). Nonetheless, that discretion is "not boundless." *Schmitz,* 376 F.3d at 84. The Second Circuit has held that district courts must exercise their discretion in light of the twin aims of § 1782: "[ (1) ] providing efficient means of assistance to participants in international litigation in our federal courts and [ (2) ] encouraging foreign countries by example to provide similar means of assistance to our courts . . . ." *In re Metallgesellschaft AG,* 121 F.3d 77, 79 (2d Cir. 1997).

The court sees no reason to analyze these factors in depth given the court's findings on the statutory pre-requisites. Nevertheless, it is worth noting that this court would have declined to order production in any event under *Intel*'s discretionary factors, because it would circumvent the arbitration panel's discovery restrictions, the arbitration panel does not appear receptive to the discovery sought here, ACP is a party to the arbitration and has the right to access and control many of the documents subpoenaed from the third party, and, finally, because GUPC's requests are overly burdensome.

On the issue of burden on the third party, as argued by counsel at the hearing and supported by the Affidavit of Donna Reese, the Document Control Manager of CH2M Hill-Panama. (CH2M Hill Opp. Ex. 2), the production associated with document request number 1

asking for "[a]ll documents[3] regarding CH2M's[4] work for ACP relating to[5] the Canal Expansion

Program,[6] including relating to the Project" would entail

> approximately 89 boxes.  In addition there are approximately 1.6575 terabytes. Your Honor, that's about 165,000,000 pages. And to give you some perspective, a copy box has about 2,000 pages. So if you just divide 2,000 into the 165 million pages they're asking for over 80,000 boxes which I'm pretty sure would fill this courtroom for us to go and collect, review so that we don't produce privileged information, mark confidential or AEO, determine whether or not we had to produce that.

(Jan. 13, 2015 Hrg. Tr. at 60.)  There can be no serious quibble that 165 million documents is

overly burdensome, especially in connection with an arbitration proceeding which, by its nature,

is designed to minimize the burden of discovery on the parties.

---

[3] "Document" means any written, typed, printed, recorded or graphic matter of any kind, including but not limited to electronically stored information, however produced or reproduced, and all non-identical copies thereof, whether different because of notes made thereon or otherwise, including, but not limited to, and by way of example only: letters or other correspondence, memoranda, e-mail, notations, reports, analyses, summaries, charts, graphs, studies, tabulations, statements, notes, notebooks, work papers, press releases, minutes of meetings or conferences, transcripts of telephone conversations, transcripts of testimony, cost sheets, financial reports, accountants' work papers, opinions or reports of consultants, checks (front and back), check stubs, receipts, contracts, agreements, tape recordings, videotapes, including computer data, computer diskettes or the memory units containing such data from which information can be obtained or translated into usable form, drafts of any of the foregoing, and all similar material. [Doc. No. 1-4, ¶ 16.]

[4] "CH2M" means CH2M HILL, including its related companies, agents, employees, representatives, and all other Persons acting, or who have acted, on its behalf. [Doc. No. 1-4, 1.]

[5] "Relating" means referring to, alluding to, responding to, in connection with, commenting on, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, constituting, evidencing, or pertaining to.  [Doc. No. 1-4, ¶ 22.]

[6] "Canal Expansion Program" means the project to expand the Panama Canal. [Doc. No. 104, 6.] "Project" means the project to design and build the Third Set of Locks for the Panama Canal as part of the Canal Expansion Program, including all of its phases such as, without limitation: the Request for Qualifications ("RFQ"), and assessment of documents in relation to the RFQ; the procurement process, including the pre-qualification phase, and the tendering phase, done in accordance with the Request for Proposal ("RFP"), preparation and submission of the selected tenderers' technical and price proposals in response to the RFP, assessment of such proposals, and any other Tender Documents; amendments to the RFP or Tender Documents; the award of the Project; Project construction, including Variations and other modifications or amendments. [Doc. No. 1-4, ¶ 7.]

Further, the IBA Rules, under which the parties have agreed to arbitrate, expressly limit third-party discovery, requiring advance authorization from the panel of arbitrators for its collection and use.  IBA Rules Article 3, § 9.  Such advance authorization has apparently neither been sought nor obtained.  GUPC's Application directly conflicts with the agreed IBA Rules and therefore it seems obvious to this court that such a grandiose document production would not be welcomed by the arbitration panel nor would the delay associated with the privilege and other review which would go along with such a discovery production be well-received.  "[T]he receptivity of the foreign tribunal is particularly important in light of the purposes of § 1782(a) . . . ."  *Babcock*, 583 F. Supp. 2d at 241.  Finally, even if the court had not found that the location of the documents in Panama were a statutory bar, the court would still consider the documents' foreign location to weigh against production by CH2M Hill-US, the parent of the company with actual possession and control of the documents, in the United States.

Therefore, this court would find, under its discretionary authority, that production pursuant to § 1782 as requested by the Petitioner should not be allowed and even if the statutory requirements were met, and the Court would exercise its authority to deny Petitioner's Application.

It is **ORDERED**

1.      Grupo Unidos por el Canal, S.A.'s,"Ex Parte Application for an Order Under 28 U.S.C. § 1782 to Obtain Discovery from Ch2M Hill for Use in an International Proceeding" [Doc. No. 1] is **DENIED**.

2.      "Autoridad Del Canal De Panama's Motion to Strike the Declaration of Anne

Marie Whitesell" [Doc. No. 15] is **DENIED**.

Dated this 17th day of April, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge