# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Honorable Marcia S. Krieger

| | |
|---|---|
| In Re Application of ) | |
| ) | |
| GRUPO UNIDOS POR EL CANAL, S.A., ) | |
| ) | Misc. Action No.  14-MC-00226-MSK-KMT |
| To Obtain Discovery for Use in an ) | |
| International Proceeding ) | |

## GUPC, S.A.'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER

**KONCILJA LAW FIRM, P.C.**

Frances A. Koncilja
D & F Tower, 10th Floor
1601 Arapahoe St.
Denver, Colorado 80202-2038
Phone: (303) 675-0234
Fax:    (303) 675-0401

*Counsel for Applicant GUPC, S.A.*

**WHITE & CASE** LLP

Carolyn B. Lamm
Francis A. Vasquez, Jr.
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Phone: (202) 626-3600
Fax:    (202) 639-9355

*Counsel for Applicant GUPC, S.A.*

May 1, 2015

## <u>TABLE OF CONTENTS</u>

BACKGROUND ...................................................................................................................1

PROCEEDING BEFORE THE MAGISTRATE JUDGE.................................................3

ARGUMENT .......................................................................................................................6

    I.     THE MAGISTRATE JUDGE'S ORDER IS SUBJECT TO *DE NOVO* REVIEW ...................................................................................6

    II.    THE MAGISTRATE JUDGE MISINTERPRETED THE STATUTORY REQUIREMENT OF A "TRIBUNAL" UNDER SECTION 1782........................................................................................7

         A.    *Intel* Requires a Functional Approach to Determine a "Tribunal" .............................................................................8

         B.    Under *Intel*, the ICC Arbitration Is a "Tribunal".....................10

         C.    The Magistrate Judge's Interpretation of Section 1782 Wrongly Imposed a Categorical Limitation on the Statute's Reach............................................................................12

         D.    The Other Cases Relied upon by the Magistrate Judge Are Inapposite ............................................................................18

    III.    THE ICC ARBITRATION IS "FOREIGN OR INTERNATIONAL" .................................................................................20

    IV.    THE MAGISTRATE JUDGE MISINTERPRETED THE STATUTE BY RULING IT DOES NOT REACH DOCUMENTS IN PANAMA .................................................................................................23

    V.    DISCRETIONARY FACTORS FAVOR GRANTING THE APPLICATION ..........................................................................................25

         A.    The Magistrate Judge's Conclusion that the Discovery Sought Is Unduly Burdensome Is Without Any Factual Foundation ..........................................................................27

         B.    The Magistrate Judge Misconstrued the IBA Rules and Terms of Reference..................................................................28

CONCLUSION..................................................................................................................33

## TABLE OF AUTHORITIES

CASES                                                                                    Page(s)

*Application of Consorcio Ecuatoriano de Telecomm. S.A., v. JAS Forwarding (USA),*
    *Inc.*, 747 F.3d 1262 (11th Cir. 2014) ......................................................8

*Application of Malev Hungarian Airlines,*
    964 F.2d 97 (2d Cir. 1992).................................................................29

*Bergesen v. Joseph Muller Corp.,*
    710 F.2d 928 (2d Cir. 1983)...............................................................22

*Chevron Corp. v. Snaider,*
    No. 14-CV-01354-RBJ-KMT, 2015 WL 226110 (D. Colo. Jan. 15, 2015) ..........................30

*Chevron Corp. v. Stratus Consulting, Inc.,*
    No. 10-cv-00047-MSK-MEH, 2010 WL 2135217 (D. Colo. May 25, 2010) ........................23

*Comision Ejecutiva Hidroelectrica Del Rio v. Nejapa Power Co.,*
    C.A. No. 08-135-GMS, 2008 WL 4809035 (D. Del. Oct. 14, 2008) ....................................14

*Dietrich v. Bauer.,*
    No. 95 Civ. 7051(RWS), 2000  WL 1171132 (S.D.N.Y. Aug. 16 2000)..............................24

*Dynegy Midstream Servs. v. Trammochem,*
    451 F.3d 89 (2d Cir. 2006) ................................................................31

*El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa,*
    341 Fed. App'x 31 (5th Cir. 2009) ......................................................18

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.,*
    403 F.3d 85 (2d Cir. 2005) .................................................................11

*Everplay Installation Inc. v. Guindon,*
    No. 08-cv-00824-PAB-CBS, 2009 WL 4693884 (D. Colo. Dec. 2, 2009) ...........................11

*First Union Mortg. Corp. v. Smith,*
    229 F.3d 992 (10th Cir. 2000) ............................................................7

*Hall St. Assocs., LLC v. Mattel, Inc.,*
    552 U.S. 576 (2008) .......................................................................14

*In re Application for Appointment of Comm'r,*
    No. C 11-80136 RS (MEJ), 2011 WL 2747302 (N.D. Cal. July 13, 2011) ..........................32

*In re Application of Chevron Corp.*,
    709 F. Supp. 2d 283 (S.D.N.Y. 2010) ...................................................................31

*In re Application of Ecuador*,
    No. 4:11mc73–RH/WCS, 2011 WL 10618727 (N.D. Fla. Aug. 24, 2011) .........................29

*In re Application of Kreke Immobilien K.G.*,
    No. 13 Misc. 110(NRB), 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ...............................25

*In re Application of Rhodianyl S.A.S.*,
    Case No. 11-1026-JTM, 2011 U.S. Dist. LEXIS 72918 (D. Kan. Mar. 25, 2011) ................19

*In re Arbitration in London*,
    626 F. Supp. 2d 882 (N.D. Ill. 2009) ....................................................................19

*In re Babcock Borsig AG*,
    583 F. Supp. 2d 233 (D. Mass. 2008) ....................................................................9

*In re Broadsheet LLC*,
    No. 11-cv-02436-PAB-KMT, 2011 WL 4949864 (D. Colo. Oct. 18, 2011) .........................10

*In re Chevron Corp.*,
    Nos. 10mc21, 10mc22, 2010 WL 8786202 (D. N. M. Sept. 13, 2010).............................6

*In re Dubey*,
    949 F. Supp. 2d 990 (C.D. Cal. 2013) ...................................................................18

*In re Ex Parte Application of Motorola Mobility LLC*,
    No. 12-CV-2618-BTM (WVG), 2013 WL 831554 (S.D. Cal. Feb. 1, 2013) .......................29

*In re Gemeinshcaftspraxis*,
    No. Civ. M19-88, 2006 WL 3844464 (S.D.N.Y. 2006) ...........................................24

*In re Hallmark Capital Corp.*,
    534 F. Supp. 2d 951 (D. Minn. 2007) ...........................................................10, 15

*In re Letters Rogatory Issued by the Director of Inspection of India*,
    385 F.2d 1017 (2d Cir. 1967) ............................................................................16

*In re Michael Wilson & Partners, Ltd.*,
    No. 06-cv-02575-MSK-PAC, 2007 WL 2221438 (D. Colo. July 27, 2007)................8, 23, 26

*In re Operadora DB Mexico, S.A.*,
    No. 6:09-cv-383-Orl-22GJK, 2009 WL 2423138 (M.D. Fla. Aug. 4, 2009) .................19, 20

*In re Owl Shipping, LLC*,
   No. CIV.A. 14-5655 AET, 2014 WL 5320192 (D.N.J. Oct. 17, 2014) .................................31

*In re Roz Trading Ltd.*,
   469 F. Supp. 2d 1221 (N.D. Ga. 2006) ..........................................................................10, 20

*In re Veiga*,
   746 F. Supp. 2d 8 (D.D.C. 2010) ..................................................................................29, 31

*In re Winning (HK) Shipping Co.*,
   No. 09-22659-MC, 2010 WL 1796579 (S.D. Fla. April 30, 2010) .................................10, 20

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*,
   141 F.3d 1434 (11th Cir. 1998) ......................................................................................21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241(2004) ................................................................................................ passim

*Interbrew Cent. Eur. Holding BV v. Molson Coors Brewing Co.*,
   CA No. 13-cv-02096-MSK-KLM, 2013 WL 5567504 (D. Colo. Oct. 9, 2013) ......................6

*Kennedy v. Am. Express Travel Related Servs. Co.*,
   646 F. Supp. 2d 1342 (S.D. Fla. 2009) ...............................................................................31

*Lumpkin v. Clark*,
   No. CIVA 07-CV-02015-MSK, 2008 WL 2441986 (D. Colo. June 16, 2008).............. 23-24

*Marc Rich & Co., A.G. v. United States*,
   707 F.2d 663 (2d Cir.1983)...............................................................................................24

*Minis v. Thomson*,
   No. MISC. 14-91050-DJC, 2014 WL 1599947 (D. Mass. Apr. 18, 2014)............................24

*Nat'l Broad. Co. v. Bear Sterns & Co.*,
   165 F.3d 184 (2d Cir. 1999) .......................................................................................13, 15

*Nitchman v. Union Pac. R. Co.*,
   No. 05-cv-01219-EWN-MEH, 2006 WL 2781416 (D. Colo. Sept. 26, 2006)........................7

*Ocelot Oil Corp. v. Sparrow Indus.*,
   847 F.2d 1458 (10th Cir. 1988) ..........................................................................................7

*OJSC UKRNAFTA v. Carpatsky Petroleum Corp.*,
   No. 3:09 MC 265 (JBA), 2009 WL 2877156 (S.D.N.Y. Aug. 27, 2009) ....................8, 10, 14

*Optimal Inv. Servs., S.A. v. Hunton & Williams LLP*,
    773 F.3d 456 (2d Cir. 2014) ...............................................16

*Peterson v. Martinez*,
    707 F.3d 1197 (10th Cir. 2013) ........................................... 18

*Phillips v. Beierwaltes*,
    466 F.3d 1217 (10th Cir. 2006) ...........................................6

*Republic of Kazakhstan v. Biedermann Int'l*,
    168 F.3d 880 (5th Cir. 1999) ...............................................13

*Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*,
    526 F.3d 38 (1st Cir. 2008) ................................................21

*Surefoot LC v. Sure Foot Corp.*,
    531 F.3d 1236 (10th Cir. 2008) ...........................................17

*Tomlinson v. El Paso Corp.*,
    245 F.R.D. 474 (D. Colo. 2007) ..........................................23

*United States v. Nelson*,
    383 F.3d 1227 (10th Cir. 2004) ...........................................17

## STATUTES AND RULES

U.S. Federal Arbitration Act,
    9 U.S.C. §§ 1-16 ..........................................................21, 31

U.S. Federal Arbitration Act,
    9 U.S.C. §§ 201-208 ...........................................4, 11, 19, 21, 31

28 U.S.C. § 1782 ...................................................... passim

28 U.S.C. § 636(b) ....................................................3, 6, 7

Federal Rule of Civil Procedure 45 ...................................23

Federal Rule of Civil Procedure 72 ...............................1, 3, 6, 7

Florida International Commercial Arbitration Act,
    Fla. Stat. §§ 684.0001-648.0049 (2015) ........................11, 19

## OTHER AUTHORITIES

S. Rep. No. 1580, at 7, U.S. Code Cong. & Admin. News 1964..............13

Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L & Com. 1 (1998) ................................................................................................9, 22

Hans Smit, *International Litigation under the United States Code*, 65 Colum. L. Rev. 1015 (1965) ................................................................................................9

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, Grupo Unidos por el Canal, S.A. ("GUPC, S.A.") submits these Objections to Magistrate Judge Kathleen M. Tafoya's Order of April 17, 2015 [Doc. No. 27] in the above-referenced action ("Order").

## **BACKGROUND**

GUPC, S.A. is a local project company based in Panama, and is one of several claimants in international arbitrations brought against Autoridad del Canal de Panama ("ACP"), a governmental entity of the Republic of Panama, regarding a dispute over a multi-billion dollar project to expand the Panama Canal.  The remaining claimants are certain of the shareholders in GUPC, S.A.: Sacyr Vallehermoso S.A. located in Madrid, Spain; Salini-Impregilo, S.A. located in Milan, Italy; and Jan de Nul N. V. located in Hofstade-Aalst, Belgium.  ACP is the sole respondent in the arbitrations.  The first three arbitrations were filed with the International Court of Arbitration of the International Chamber of Commerce ("ICC") in Paris, France (each one an "ICC Arbitration").  The international arbitrations proceed on a claim by claim basis pursuant to the Dispute Resolution Clause of the underlying Conditions of Contract ("Contract"), Article 20 [Doc. No.8-4 at 8-9].  A claim is initially brought before the Dispute Adjudication Board ("DAB") sitting in Panama, the decision of which can be challenged by commencing an international arbitration with the ICC.  *See* Contract Arts. 20.4, 20.6.  To date, three such disputes have been filed.

The Arbitration Clause of the Contract, Article 20.6, and the Terms of Reference ("TOR") [Doc. No. 8-7] ¶¶ 64-67, provide: the dispute shall be finally settled under the Rules of Arbitration of the ICC ("ICC Rules"); in addition to the ICC Rules, the IBA Rules on the Taking of Evidence in International Arbitration ("IBA Rules") provide guidance to the arbitral tribunal; the dispute shall be settled by three arbitrators appointed in accordance with the ICC Rules; the

applicable substantive law is Panamanian law, while the procedural rules are the ICC Rules and

IBA Rules (providing guidance); the arbitration agreement and arbitration shall be governed by

the U.S. Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-307; and the seat of the arbitration is

Miami, Florida.

The dispute centers on a project known as the Third Set of Locks for the Panama Canal

(the "Project"), which is then largest part of the Panama Canal Expansion Program.   Grupo

Unidos por el Canal, a joint venture of European construction companies, was awarded the

contract for the Project in 2009 after a competitive bidding.[1]   The claimants in the international

arbitrations allege that information ACP provided to bidders was inaccurate.   The claimants

further allege that ACP concealed and withheld critical information regarding, inter alia, the

nature of the existing geotechnical conditions at the Project site, which has led to delays, cost

overruns, and other related issues to be adjudicated in the ICC arbitrations.

On October 1, 2014, GUPC, S.A. filed an application in this Court pursuant to 28 U.S.C.

§ 1782 to obtain documents from CH2M HILL ("Application"), whose global headquarters and

principal place of business is in Englewood, Colorado.   [Doc. No. 1].   CH2M HILL ("HILL")

has served for years as a principal program manager to ACP in connection with the Panama

Canal expansion, including specifically regarding geotechnical issues that are directly relevant to

the inaccurate, concealed and withheld information in the tender documents and integrally

intertwined with the issues before the ICC tribunals.   In view of that role, HILL has information

---

[1] Grupo Unidos por el Canal was comprised of several member companies that included Sacyr
Vallehermoso S.A., Salini-Impregilo, S.A., and Jan de Nul N. V.   Vasquez ¶ 2 [Doc. 1-2].
GUPC, S.A. was incorporated in November 2009 with ACP's acquiescence for the purpose of
compliance with Panamanian law.   In July 2010, for purposes of administration under
Panamanian law, the Contract was assigned to GUPC, S.A. for performance, but GUPC, S.A.'s
shareholders remained equally responsible under Article 1.7 of the Contract and a related Joint
and Several Guaranty for performance and financing.

in its custody and control that bears directly on the dispute underlying the ICC arbitration.  In fact, as subsequently disclosed in HILL's opposition to the Application, many potentially responsive documents are in HILL's possession in the United States, as well as in Panama and other countries.  GUPC, S.A.'s Application was assigned to Judge Krieger and referred to Magistrate Judge Tafoya pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Rule 72(a) and (b) of the Federal Rules of Civil Procedure, for all purposes.  [Doc. No. 3].

## PROCEEDING BEFORE THE MAGISTRATE JUDGE

HILL filed an opposition to GUPC, S.A.'s Application [Doc. No. 10, "HILL Opposition"], and ACP moved to intervene in the proceeding [Doc. No. 8], filing as part of its motion a Complaint in Intervention [Doc. No. 8-1, "ACP Complaint"].   HILL and ACP contended that the Application did not meet the threshold statutory requirement of Section 1782 because the ICC Arbitration is a private arbitration and, as such, is not a "tribunal" within the scope of Section 1782, and because the arbitration is seated in Miami, Florida and governed by the FAA, it is not "foreign or international" within the scope of Section 1782.  HILL Opp'n at 6; ACP Compl. ¶ 24.  HILL and ACP also contended that the discretionary factors for considering a Section 1782 Application described by the U.S. Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-66 (2004), weighed against granting the Application, and that the discovery GUPC, S.A. sought was unduly burdensome and could not reach documents located abroad.  HILL Opp'n at 8-11, 14-15; ACP Compl. ¶¶ 28-34.

GUPC, S.A. responded to ACP and HILL, noting that they had inappropriately relied on reasoning from cases in other Circuits that were superseded by the Supreme Court's directives in *Intel*.  GUPC, S.A. Reply to HILL's Opp'n ("GUPC, S.A. Reply"), at 4-10 [Doc. No. 13].  Specifically, *Intel* rejected the kind of "categorical limitations" placed on the statute's reach that

ACP and HILL sought to impose, namely that Section 1782 is limited to governmental or intergovernmental arbitral tribunals, and instead held that the term "tribunal" in Section 1782 was to be analyzed by a functional analysis of the nature of the adjudicatory body at issue.  In short, the body need only act as a first-instance decision maker and issue a dispositive ruling on the merits that is subject to judicial review.  *Intel*, 542 U.S. at 259.

GUPC, S.A.'s submission included an unrebutted expert declaration by Professor Anne Marie Whitesell, former Secretary General of the International Court of Arbitration of the International Chamber of Commerce, which described as a factual matter the function and powers of an ICC arbitration and tribunal.  [Doc. No. 13-2].  Professor Whitesell's declaration made it clear that the ICC Arbitration was a "tribunal" under Section 1782 because it acts as a first-instance decision maker, issuing a dispositive ruling on the merits of the case that is subject to review by courts.  GUPC, S.A. Reply, at 6-8.  Further, the ICC Arbitration is "foreign or international" under Section 1782 because, inter alia: none of the parties to the arbitration is a U.S. citizen; the arbitration concerns a dispute over a project located in Panama, pursuant to a contract governed by Panamanian law, with performance in Panama; the substantive law applied in the arbitration is Panamanian law; the arbitrators are international arbitrators from Spain, Belgium, and the United Kingdom, and the arbitration agreement and award is governed by FAA Chapter 2, *i.e.*, recognition and enforcement under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330, U.N.T.S. 38 ("New York Convention"), codified at FAA §§ 201-208, 9 U.S.C. §§ 201-208 (2000).  GUPC, S.A. Reply, at 2-4.

ACP's and HILL's argument to the contrary – that the arbitration was not international because it was seated in Miami, Florida – ignored every other characteristic of the arbitration,

which all render the arbitration international, as well as the case law and commentary establishing that an arbitration seated in the United States can still be international.  Indeed, ACP's and HILL's contentions mischaracterize the true nature of the ICC Arbitration.  The FAA was designated in the arbitration clause, and governs interpretation of that clause, but the Parties also designated the ICC Rules to govern the procedure.  The selection of the ICC Rules was critical as the Parties hailed from four different countries – Panama, Spain, Italy, and the Netherlands, and leaving the procedure to be governed solely by the FAA would not have been acceptable.  Moreover, the core of the dispute is governed entirely by Panamanian law, as designated by both Parties in the Contract.

GUPC, S.A. also explained that the *Intel* discretionary factors weigh in favor of granting the Application, the alleged burden of the discovery was overstated and, in any event, could be resolved between the parties once the subpoena was actually served.  GUPC, S.A. Reply, at 10-14.

Oral argument was held on January 13, 2015.  ACP attempted to submit a slide presentation as evidence, which the Magistrate Judge denied.  Hr'g Tr. 67:5-13 [Doc. No. 23].  During argument, the Magistrate Judge intimated that, while the issue was undecided by the courts, she thought the ICC Arbitration was likely a "tribunal" and "foreign or international."  Hr'g Tr. 8:2-15 ("I don't think it's particularly tricky about whether an arbitration is a proper tribunal because I think that's pretty well decided that it is. . . . I think it's a little different from the cases where all the arbitrators are in -- are also US citizens.  That's not the case here.  Here we're – they're proceeding under ICC rules, also applying Panama law. The parties are not United States parties. They're foreign parties.").  Nonetheless, on April 17, 2015, Judge Tafoya issued her Order denying GUPC, S.A.'s Application.

As detailed below, the Magistrate Judge decided GUPC, S.A.'s Application without fully analyzing the circumstances and relevant evidence regarding the functions of the ICC tribunal, the international aspects of the ICC Arbitration, and the requirements of the Terms of Reference and IBA Rules.  Therefore, GUPC, S.A. submits these Objections for *de novo* review of its Application by the Court as provided for by Rule 72(b) of the Federal Rules of Civil Procedure.

## ARGUMENT

## I.     THE MAGISTRATE JUDGE'S ORDER IS SUBJECT TO *DE NOVO* REVIEW

GUPC, S.A.'s Application was referred to Magistrate Judge Tafoya "pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b) . . . for all purposes[.]"  [Doc. No. 3].  The Tenth Circuit has left undecided whether a magistrate judge's decision on a Section 1782 application is a dispositive ruling requiring *de novo* review by the district court or non-dispositive ruling requiring review by the district court for clear error or contrary to law.  *Phillips v. Beierwaltes*, 466 F.3d 1217, 1222 (10th Cir. 2006) (leaving open "[w]hether the magistrate judge's order to compel discovery was dispositive or non-dispositive in this unusual proceeding under 28 U.S.C. § 1782," because the ruling in any event was not a final appealable order); *In re Chevron Corp.*, Nos. 10mc21, 10mc22, 2010 WL 8786202 *3 (D. N. M. Sept. 13, 2010) (noting that *Phillips* left open the question, and reviewing the magistrate judge's Section 1782 opinion and order *de novo* "out of an abundance of caution"); *compare Interbrew Cent. Eur. Holding BV v. Molson Coors Brewing Co.*, CA No. 13-cv-02096-MSK-KLM, 2013 WL 5567504 * 1 (D. Colo. Oct. 9, 2013) (issuing non-dispositive Order on Section 1782 application based on "persuasive precedent from *Chevron* and the language of [D.C. COLO. L. Civ. R. 72.1 B.7].").

Magistrate Judge Tafoya's denial of GUPC, S.A.'s Section 1782 Application is a "dispositive" order for purposes of Federal Rule of Civil Procedure 72, because its effect is final;

it denies GUPC, S.A. access to discovery assistance in U.S. court.  *See First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 996 (10th Cir. 2000) (holding that a remand order by a magistrate judge is dispositive because it "is a final decision in the sense that it is 'dispositive of all the claims and defenses in the case as it banishes the entire case from the federal court'") (inside quotation and citation omitted); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1463 (10th Cir. 1988) (holding that a magistrate's order dismissing a case is dispositive because "[d]ismissal with prejudice is undoubtedly a final decision"); *Nitchman v. Union Pac. R. Co.*, No. 05-cv-01219-EWN-MEH, 2006 WL 2781416, at *2 (D. Colo. Sept. 26, 2006) ("The Tenth Circuit applies an 'effects' test to determine whether a ruling is dispositive or non-dispositive" for purposes of Fed. R. Civ. P. 72 and 28 USC § 636(b)(1)) (citing *First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000)).  Accordingly, the Order is subject to *de novo* review.

## II.      THE MAGISTRATE JUDGE MISINTERPRETED THE STATUTORY REQUIREMENT OF A "TRIBUNAL" UNDER SECTION 1782

Section 1782, entitled "Assistance to foreign and international tribunals and to litigants before such tribunals," provides in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a) (2012).

The Magistrate Judge held that the term "tribunal" in Section 1782(a) did not extend to a private international arbitration like the ICC Arbitration.  Order at 15.  The Magistrate Judge's interpretation of Section 1782(a) is fundamentally at odds with the Supreme Court's decision in *Intel* because it is a categorical ruling that is contrary to *Intel's* holding, which rejected

categorical limitations placed on the statute. In fact, under the uncontested facts presented here, the ICC Arbitration is an international tribunal.

### A. *Intel* Requires a Functional Approach to Determine a "Tribunal"

In *Intel*, the Supreme Court held that a "tribunal" within the meaning of § 1782(a) requires only that the adjudicating body at issue act as "a first-instance decision maker" and that it issue a dispositive ruling on the merits that is subject to review by a court. *Intel*, 542 U.S. at 246-47, 258; *id.* at 259 ("We hold that § 1782(a) requires **only** that a dispositive ruling by the Commission, reviewable by European courts, be within reasonable contemplation.") (emphasis added). In arriving at its conclusion, the Court rejected "categorical limitations" placed on the statute's reach and, instead, conducted a functional analysis of the nature of the adjudicatory body at issue. *Id.* at 255, 263 n.15 ("Congress left unbounded by categorical rules whether a matter is proceeding 'in a foreign or international tribunal'"). Accordingly, the *Intel* test is a non-formalistic inquiry. *E.g.*, *Application of Consorcio Ecuatoriano de Telecomm. S.A., v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 n.4 (11th Cir. 2014) (discussing that the *Intel* Court "applied a functional analysis focusing on whether a body acts as a first-instance adjudicative decision maker, permits the gathering and submission of evidence, has the authority to determine liability and impose penalties, and issues decisions subject to judicial review"); *In re Michael Wilson & Partners, Ltd.*, No. 06-cv-02575-MSK-PAC, 2007 WL 2221438, at *2 (D. Colo. July 27, 2007) ("Under the Supreme Court's broad interpretation of a 'foreign proceeding,' the crucial inquiry is whether the current proceedings will lead to a decision on the merits"); *OJSC UKRNAFTA v. Carpatsky Petroleum Corp.*, No. 3:09 MC 265 (JBA), 2009 WL 2877156, at *4 (S.D.N.Y. Aug. 27, 2009) (conducting a functional analysis and holding that the Arbitration Institute of the Stockholm Chamber of Commerce was a tribunal: "AISCC is acting as a 'first-instance decision maker,' whose decision may be subject to review, and thus falls within the

purview of Section 1782.") (quoting *Intel*, 542 U.S. at 259).

The *Intel* Court further explained that Congress revised the statute in 1964 by, among other things, replacing the term "any judicial proceeding" with the broader "a proceeding in a foreign or international tribunal," and noted that "'the term 'tribunal' . . . includes . . . arbitral tribunals.'" *Id.* at 258 (quoting Hans Smit, *International Litigation under the United States Code*, 65 Colum. L. Rev. 1015, 1026 n.71 (1965)).  As Professor Smit – the principal drafter of the revisions to Section 1782 – explained in the article referenced by the Supreme Court: "The term tribunal encompasses ***all bodies that have adjudicatory power***, and is intended to include not only civil, criminal, and administrative courts . . . but also arbitral tribunals or single arbitrators," and "[t]he term 'Tribunal' was chosen deliberately as being both neutral ***and encompassing***.  Any person or body exercising adjudicatory power is included." Smit, *International Litigation*, 65 Colum. L. Rev. at 1021 & n.36 (emphasis added).  Professor Smit subsequently reconfirmed that "the term 'tribunal' in Section 1782 includes an arbitral tribunal created by private agreement," and is not confined to an international tribunal established under a treaty.  Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 Syracuse J. Int'l L. & Com. 1, 6 (1998).

Since *Intel,* the majority of courts interpreting Section 1782(a) have applied the functional analysis to determine whether a given proceeding – including a private ICC arbitration – is a "tribunal," rejecting categorical limitations such as whether the arbitration is private or pursuant to a treaty.  *E.g.*, *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 238-39 (D. Mass. 2008) (holding that a private ICC arbitration is a tribunal: "The ICC, like the European Commission, is a 'first-instance decision maker' that conducts proceedings which lead to a dispositive ruling.  The parties agree that the ICC has authority to hear the dispute between

BBAG and Hitachi, to weigh evidence, and to issue a decision that is binding on the parties.");

*OJSC UKRNAFTA*, 2009 WL 2877156 *4 (holding that private arbitration under the auspices of

the Arbitration Institute of the Stockholm Chamber of Commerce pursuant to UNCITRAL Rules

was a tribunal under § 1782); *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1224-25 (N.D. Ga.

2006) (holding that a private arbitration under the auspices of the International Arbitral Centre of

the Austrian Federal Economic Chamber is a tribunal: "The Centre's arbitral panels are similarly

first-instance decisionmaker[s] that issue decisions 'both responsive to the complaint and

reviewable in court.' . . . the Centre is constituted to hear disputes, weigh evidence, and issue

rulings that will finally bind the Parties in accordance with its Rules[.]") (quoting *Intel*, 542 U.S.

at 255); *In re Winning (HK) Shipping Co.*, No. 09-22659-MC, 2010 WL 1796579, at *8 (S.D.

Fla. April 30, 2010) (holding that private arbitration under London Maritime Arbitrators

Association Rules is a tribunal: "the arbitral body in this instance actually acts as a first-instance

decision maker whose decisions are subject to judicial review"); *In re Hallmark Capital Corp.*,

534 F. Supp. 2d 951, 955 (D. Minn. 2007 (holding that under *Intel*, Section 1782 extended to

private arbitration in Israel); *see also In re Broadsheet LLC*, No. 11-cv-02436-PAB-KMT, 2011

WL 4949864, at *2 (D. Colo. Oct. 18, 2011) (recognizing that a private arbitration under the

Rules of the London Chartered Institute of Arbitrators is a foreign or international tribunal, in the

context of ruling that petitioner is an interested party "to that arbitration proceeding").

### B.     Under *Intel*, the ICC Arbitration Is a "Tribunal"

Applying the *Intel* Court's functional analysis irrefutably establishes that the ICC

Arbitration is a "tribunal" under §1782(a).  As detailed in the expert declaration of Professor

Whitesell [Doc. No. 13-2], the arbitral tribunal is a first-instance decision maker that resolves

fact and legal issues to the dispute, is impartial and independent of the parties, takes evidence,

conducts hearings and hears witnesses, provides for interim relief, issues procedural orders,

renders a ruling on jurisdiction and/or the merits that is binding on the parties, and its decision is subject to review by national courts.  Whitesell ¶¶ 7-20;[2] Order at 8.  In sum, the ICC Arbitration clearly fulfills all of *Intel's* requirements.  Because the arbitration agreement and any award is considered foreign under FAA § 202, judicial review in this case would be pursuant to the New York Convention and, for purposes of set aside, the Florida International Commercial Arbitration Act (an UNCITRAL Model Law), Fla. Stat. §§ 684.0001-648.0049 (2015).  *Everplay Installation Inc. v. Guindon*, No. 08-cv-00824-PAB-CBS, 2009 WL 4693884, at *4 (D. Colo. Dec. 2, 2009) (citing *Encyclopedia Universalis S.A. v. Encyclopedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005)); Whitesell ¶ 20.

The functional analysis of the ICC Arbitration should also take into account that the underlying Project is a massive national public works project in Panama – undertaken in the public interest – and which was approved by the Panamanian people in a national referendum in October 2006.[3]  The ICC Arbitration in this case is clearly not a purely private proceeding as the Project is a direct undertaking by the Government of Panama.  Indeed, ACP, which is a signatory to the Contract, and which is subject to detailed public acquisition regulations,[4] is an autonomous

---

[2] The Magistrate Judge found the factual information about the ICC in Professor Whitesell's declaration helpful, and denied ACP's motion to strike the declaration.  Order at 6-7.

[3] *See* Law No. 28 "Approving the proposal to build the third set of locks in the Panama Canal, subject to the Executive Organ, and enacting other provisions," July 17, 2006, Official Gazzette No. 25,590 (Pan); Resolution of the Electoral Tribunal of the Republic of Panama, November 1, 2006, Bulletin No. 2,293 (recognizing the approval of the referendum); *see also* ACP, *Proposal for the Expansion of the Panama Canal: Third Set of Locks Project*, at 15, 81, *available at* http://www.pancanal.com/eng/plan/documentos/propuesta/acp-expansion-proposal.pdf.

[4] *See* Compilation of the Acquisition Regulations of the Panama Canal Authority, Regulation approved by Agreement No 24 of Oct. 1999, Art. 1 ("Este reglamento establece las normas y procedimientos uniformes aplicables a la contratacion o adquisicion de las obras, bienes y servicios necesarios para el funcionamiento, mantenimiento, conservacion, modernizacion y apliacion del Canal de Panama; a la disposicion y venta de bienes muebles de la Autoridad; y al ortorgamiento de concesiones y contratacion de servicios especiales.") (*"This regulation establishes uniform rules and procedures applicable to the contracting or acquisition of*

–11–

legal entity of public law of the Government of Panama, established under Title XIV of the Constitution of the Republic of Panama,[5] and governed by the Organic Law No. 19.[6]  ACP's revenues, which constitute a significant source of revenue for the Panamanian Government, amounted to USD 2.6 billion in 2014 alone.[7]

### C.    The Magistrate Judge's Interpretation of Section 1782 Wrongly Imposed a Categorical Limitation on the Statute's Reach

The Magistrate Judge ruled that Section 1782 did not extend to the category of private international arbitrations.  Instead of conducting the functional analysis required by *Intel* to reach her conclusion, Judge Tafoya's ruling was based on distinguishing private arbitrations from judicially-resolved disputes, whose decisions "are subject to immediate and comprehensive appellate review," Order at 9, and adopting the reasoning of two decisions that predate and are

---

construction, goods, and services required for the operation, maintenance, conservation, modernization and expansion of the Panama Canal; the disposition and sale of Panama Canal Authority property; and award of concessions and contracting of special services.") (translation by counsel).

[5] *See* Political Constitution of the Republic of Panama, art. 315 ("El Canal de Panama constituye un patrimonio inalienable de la Nacion panameña") (*"[t]he Panama Canal constitutes an inalienable patrimony of the Panamanian nation . . ."*) (translation by counsel); *id.*, art 316 (explicando que la ACP opera "con arreglo a las normas constitucionales y legales vigentes") (explaining that the ACP is subject to "constitutional and legal rules in force"); *id.*, art. 317 ("La Autoridad del Canal de Panamá . . . formar[a] parte de la estrategia maritima nacional.") (*"[ACP] . . . forms part of the national maritime strategy"*) (translation by counsel).

[6] *See* Law No. 19 "For the organization of the Panama Canal Authority," June 11, 1997 (Pan) Preamble ("El proposito de la presente Ley es proporcionar, a la Autoridad del Canal de Panama, las normas para su organizacion, funcionamiento y modernizacion, con el objeto de hacer del canal una empresa eficiente y rentable, pilar del desarrollo humano y socioeconomic del pais, abierta, sin discriminacion alguna, a la participacion de hombres y mujeres, e integrada a la estrategia meritama nacional.") (*The purpose of this Law is to furnish the Panama Canal Authority with legislation for its organization, operation, and modernization to make the Canal a safe and profitable enterprise, a pillar in the human, social, and economic development of the country, open, without discrimination whatsoever, to the participation of men and women and integrated to the national maritime strategy."*) (translation by counsel).

[7] *See* Financial Statements Report for Autoridad del Canal de Panama for the Year ended Sept. 30, 2014, *available at* https://www.pancanal.com/eng/general/fin-statements/FY2014.pdf.

contrary to the reasoning in *Intel*: *Nat'l Broad. Co. v. Bear Stearns & Co.*, 165 F.3d 184, 190 (2d Cir. 1999), which held that a private ICC arbitration is not an "international tribunal" because the statute's legislative history and policy considerations support that Section 1782 is only "intended to cover governmental or intergovernmental arbitral tribunals;" and *Republic of Kazakhstan v. Biedermann Int'l*, 168 F.3d 880, 881 (5th Cir. 1999), which "elect[ed] to follow the Second Circuit's recent decision that § 1782 does not apply to private international arbitrations." Order at 11-12, 15. The Magistrate Judge was simply not free to ignore the more recent Supreme Court authority and apply the reasoning of earlier Circuit Court cases, no matter how persuasive she found them. She was required to apply the *Intel* functional analysis.

In distinguishing the ICC Arbitration from "judicially-resolved disputes," the Magistrate Judge erroneously equated a tribunal with "an administrative or quasi-judicial proceeding" and a "state sponsored" proceeding. Order at 10, 13-15. Section 1782, however, is not limited to administrative or quasi-judicial proceedings. The legislative history specifically notes that the statute is "extended to international tribunals and litigants before such tribunals." S. Rep. No. 1580, at 7, U.S. Code Cong. & Admin. News 1964, at 3782, 3788.

Moreover, to further illustrate the false distinction, the categorical "state sponsored" treaty arbitrations that *National Broadcasting* and the Magistrate Judge deemed are covered by Section 1782 are ***not*** subject to "immediate and comprehensive appellate review." Rather, like the ICC Arbitration, they are subject to essentially the same type of review of an award as under the FAA: expedited and focused on defects in the arbitration proceeding, not on providing full reconsideration on the merits. *E.g.*, United Nations Commission on International Trade Law ("UNCITRAL") Model Law on International Commercial Arbitration, Art. 34 (listing limited

grounds for setting aside award);[8] Convention on the Settlement of Investment Disputes Between States and Nationals of Other States, Art. 52 (listing limited grounds for annulling award in bilateral investment treaty disputes);[9] *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (holding that the statutory grounds for judicial review in the FAA are "exclusive" and provide for "expedited judicial review").

In other words, there is no legally meaningful distinction between a private arbitration under the auspices of the ICC and an arbitration under the auspices of treaty rules in terms of the review provided to the arbitration award or the powers of a tribunal for the purposes of Section 1782(a). Indeed, under the Magistrate Judge's excessively stringent theory of review, a "tribunal" under Section 1782(a) would categorically ***never*** be established for arbitration cases. This is explicitly at odds with the mandate of *Intel*, which held that a tribunal need only issue "a dispositive ruling," which means "a final administrative action both responsive to the complaint and reviewable in court." *Intel*, 542 U.S. at 258. Indeed, many arbitrations conducted under the UNCITRAL rules are pursuant to a private contract. *E.g.*, *OJSC UKRNAFTA*, 2009 WL 2877156, at *2, *4 (granting Section 1782 discovery where underlying arbitration was before the Arbitration Institute of the Stockholm Chamber of Commerce pursuant to contract between the parties, finding "sufficient judicial reviewability" of the arbitral tribunal); *Comision Ejecutiva Hidroelectrica Del Rio v. Nejapa Power Co.*, C.A. No. 08-135-GMS, 2008 WL 4809035, at *1 (D. Del. Oct. 14, 2008), *vacated on other grounds* 342 Fed. App'x 821, 822 (3rd Cir. 2009) (granting Section 1782 discovery in private arbitration pursuant to Power Purchase Agreement conducted under UNCITRAL rules and seated in Switzerland; vacated because the evidentiary phase of the arbitration was closed thereby mooting the discovery request).

---

[8] Available at http://www.uncitral.org/pdf/english/texts/arbitration/ml-arb/07-86998_Ebook.pdf.

[9] Available at https://icsid.worldbank.org/ICSID/StaticFiles/basicdoc/CRR_English-final.pdf.

The Magistrate Judge was equally mistaken to rely on *National Broadcasting and Biedermann*. Those cases were decided ***before*** *Intel* and conflict with *Intel's* holding because they apply the kind of restrictive categorical rule to determining a "tribunal," namely whether the arbitration is "state sponsored" pursuant to a treaty, that the Supreme Court rejected in *Intel*. More specifically, *National Broadcasting's* holding is the result of the court's resort to the statute's legislative history because it considered the term "tribunal" ambiguous. 165 F.3d at 188, 190. The decision is at odds with the holding in *Intel* because there the Supreme Court relied on the statute's language and context to reject categorical limitations to the statute's reach, and utilize instead the functional analysis discussed above:

> The language of § 1782(a), confirmed by its context . . . warrants this conclusion: The statute authorizes, but does not require, a federal district court to provide assistance to a complainant in a . . . proceeding that leads to a dispositive ruling, *i.e.*, a final administrative action both responsive to the complaint and reviewable in court. Accordingly, we reject the categorical limitations Intel would place on the statute's reach.

*Intel*, 542 U.S. 255; *see also id.* at 263 n.15 ("Congress left unbounded by categorical rules the determination whether a matter is proceeding 'in a foreign or international tribunal'"); *see also In re Hallmark Capital*, 534 F. Supp. 2d at 955 (explaining that "the [Supreme] Court's general approach to Section 1782 [in *Intel*], as well as the statute's legislative history, makes clear that the statute is best read not to impose any restrictive definitional exclusions that would necessarily preclude assistance to all private arbitral bodies"). The legislative history played a secondary role in *Intel*; Justice Scalia's concurring statement noted that the statute's legislative history is unreliable: "it is . . . quite unnecessary to seek repeated support in the words of a Senate Committee Report . . . so far as I know the statements of the Senate Report may be contradicted elsewhere"). *Id.* at 267.

Indeed, *National Broadcasting* is also at odds with the Second Circuit's prior decision,

*In re Letters Rogatory Issued by the Director of Inspection of India*, 385 F.2d 1017 (2d Cir. 1967), which, like *Intel*, interpreted the term "foreign or international tribunal" under § 1782 using a functional analysis.  In *Letters Rogatory*, the Second Circuit considered whether a proceeding before the Director of Inspection under the India Income Tax Act was a proceeding before a "foreign or international tribunal" under Section 1782.  385 F.2d at 1019-20.  The Court reviewed the powers of the Tax Director and concluded the proceeding was not a foreign or international tribunal because the Tax Director did not act like a judge.  *Id.* at 1020.  In doing so, the Court contrasted the Tax Director's powers to those of a French investigating magistrate (*juges d'instruction*), as the latter was cited in the statute's legislative history as an example of a tribunal.  *Id.* at 1020.  The Court repeatedly noted in its comparison the impartial, adjudicatory nature of the magistrate as compared to the Tax Director:

> The juge d'instruction represents neither the interest of the police nor that of the State Prosecutors. . . Rather, his aim is simply to ensure that justice is done.
>      In contrast to the French Juge d'instruction, the Indian Income Tax officer has the sole responsibility for making the government's argument as well as for evaluating it.  As the Supreme Court of India has held, "the income-tax authorities . . . are not acting as judges deciding a litigation between the citizen and the State."

*Id.* at 1020 (inside quotation and citation omitted); *see also Optimal Inv. Servs., S.A. v. Hunton & Williams LLP*, 773 F.3d 456, 461 n.8 (2d Cir. 2014) (noting that Judge Friendly in *Letters Rogatory* held out the French magistrate "as the **paradigmatic** example of 'tribunal' for the purposes of § 1782, principally because his aim is simply ***to ensure that justice is done***") (emphasis added).  The function of the ICC Arbitration, no less than the French magistrate, is to ensure that justice is done.

The Magistrate Judge also erred in relying on *National Broadcasting* and *Biedermann* to conclude that policy arguments favored excluding private ICC arbitrations from the scope of

Section 1782.    According to the Magistrate Judge, extending Section 1782 to private international arbitrations "would defeat the timeliness and cost-effectiveness of arbitration, and would place a heavy burden on the federal courts to determine discovery requests."  Order at 14-15, 16.  This reasoning is again outdated in light of *Intel*.  The fourth *Intel* discretionary factor allows the district court to consider whether "unduly intrusive or burdensome [discovery] requests may be rejected or trimmed."  *Intel*, 542 U.S. at 264.  The ability of the district court in its discretion to modify discovery requests thus vitiates the concern raised by the *National Broadcasting* and adopted by the Magistrate Judge.

Accordingly, the Magistrate Judge erred in following *National Broadcasting* and *Biedermann* rather than conducting a functional analysis of the ICC Arbitration, as required by *Intel*.  The Magistrate Judge's assertion that it is "completely implausible" that the Supreme Court could have "reverse[d]" *National Broadcasting* and *Biedermann* in a "parenthetical quotation supporting an unrelated proposition" illustrates the Magistrate Judge's misunderstanding of *Intel*.  Order at 14.  The Supreme Court in *Intel* squarely overruled the reasoning applied in *National Broadcasting* and *Biedermann*, regardless of whether it called out these particular cases not before it.  As the Tenth Circuit has explained, courts should be extremely deferential even to dicta of the Supreme Court.  *United States v. Nelson*, 383 F.3d 1227, 1232 (10th Cir. 2004) ("We do not . . . approach opinions of the Supreme Court with a view to reaching the narrowest construction possible. Instead, we have said that 'this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, *particularly when the dicta is recent and not enfeebled by later statements.*'") (citation omitted); *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1242-1243 (10th Cir. 2008) (concluding it must "follow the Supreme Court's directions" even if plausibly characterized as

dicta "confined to a footnote"); *see also Peterson v. Martinez*, 707 F.3d 1197, 1210, 1211 (10th Cir. 2013) (expressly relying on "obiter dicta" of the Supreme Court "not necessarily involved nor essential to determination of the case"). Thus, it was error for the Magistrate Judge not to defer to the reasoning of *Intel*.

### D.     The Other Cases Relied upon by the Magistrate Judge Are Inapposite

The other cases relied upon by the Magistrate Judge, *see* Order at 10, 14-15, are inapposite for the same reasons discussed with respect to *National Broadcasting*: they do not conduct any meaningful functional analysis of the arbitration, but instead apply the kind of restrictive categorical rule to determining a "tribunal," namely whether the arbitration is pursuant to a treaty, that the Supreme Court rejected in *Intel*. Moreover, the courts in these cases did not have the benefit of a declaration like Professor Whitesell's to explain factually how an ICC arbitration functions, and specifically that an ICC tribunal's decision is subject to judicial review under the law of the seat of the arbitration and where applicable the New York Convention. Whitesell ¶¶ 14, 16, 19.

Thus, in *El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 Fed. App'x 31, 34 (5th Cir. 2009), the Fifth Circuit simply held that "we remain bound by our holding in *Biedermann*." In *Dubey*, the court noted that the "petitioner briefly addresses" the functional analysis and "the parties do not address whether or to what extent the arbitration award here is reviewable by courts," yet nonetheless categorically concluded that the functional analysis of *Intel* does not apply "to *any* type of proceeding." *In re Dubey*, 949 F. Supp. 2d 990, 994-95 n.3 (C.D. Cal. 2013), *appeal dismissed* (Aug. 27, 2013). The court in *Norfolk* categorically interpreted "the *Intel* court's reference to 'arbitral tribunals' as including state sponsored arbitral bodies but excluding purely private arbitrations," and concluded without

–18–

further reasoning that a waiver of review of the arbitration award "to the fullest extent permitted by applicable law" was equivalent to no judicial review. *In re Arbitration in London*, 626 F. Supp. 2d 882, 885-86 (N.D. Ill. 2009). In this case, however, Professor Whitesell explains that the waiver language of ICC Rule 34(6), that the parties "*shall be deemed to have waived their right to any form of recourse insofar as such waiver can validly be made,*" cannot waive judicial review under most national arbitration laws, including those of the United States. Whitesell ¶ 17. The court in *Rhodianyl* similarly mistakenly concluded that there was "the most limited review" of a French ICC award on the basis of the enforcement criteria under the New York Convention, but without any analysis of the award's review by French courts. *In re Application of Rhodianyl S.A.S.*, Case No. 11-1026-JTM, 2011 U.S. Dist. LEXIS 72918, at *49-50 (D. Kan. Mar. 25, 2011). The court was incorrect. *See* Whitesell ¶¶ 17, 19 (explaining that "[t]he ICC Rules refer to the role of national courts in reviewing awards" and, for example: "Any award rendered by an ICC tribunal is '*deemed to be made at the place of the arbitration*,' ICC Rules, Art. 31(3), and thus could be subject to judicial review under the law of the seat of the arbitration . . . .").

What the Magistrate Judge overlooked is that it is exactly the case here, given the ICC Arbitration seat in Miami, Florida, that the international arbitral award rendered by the tribunal can be reviewed for set aside under the Florida International Commercial Arbitration Act (an UNCITRAL Model Law), Fla. Stat. § 684.0046, or under the FAA Chapter 2 for procedural defects under Article V of the N.Y. Convention, or in any jurisdiction where enforcement under the N.Y. Convention is attempted.

For similar reasons, the Magistrate Judge's reliance on *In re Operadora DB Mexico, S.A.*, No. 6:09-cv-383-Orl-22GJK, 2009 WL 2423138 (M.D. Fla. Aug. 4, 2009), is also misplaced. The court in *Operadora* concluded that the ICC arbitral panel's decisions were "not judicially

reviewable" because they were only reviewed by the ICC Court as to their form.   *In re Operadora*, 2009 WL 2423138, at *10, *12.   The conclusion is wrong because it fails to consider the judicial review available under the law of the seat of the arbitration.   The *Operadora* court also concluded that a private arbitration was not a "tribunal" because, unlike a governmental arbitration, its authority to issue binding decisions was contractual.   *Id.* at *11-12.   But this conclusion categorically excludes private arbitrations and is the kind of limitation on the statute rejected by the Supreme Court in *Intel*.   Lastly, *Operadora* is at odds with other federal courts in Florida and the Eleventh Circuit that have held a private arbitration falls within the scope of Section 1782(a) based on a functional analysis.   *See, e.g.*, *In re Winning (HK) Shipping Co.*, 2010 WL 1796579, at *8; *In re Roz Trading Ltd.*, 469 F. Supp. 2d at 1224-25.

With respect to the post-*Intel* cases discussed in section II.A above that hold Section 1782 extends to private international arbitrations, the Magistrate Judge wrongly distinguished them on the basis that their holdings "are most often based on a broad interpretation of a citation within *Intel* to an article written by Hans Smit where he defines tribunal as . . . 'include[ing] . . . arbitral tribunals[.]'"   Order at 11.   The distinction is specious because, as discussed above, those cases are based on a functional analysis of the arbitration, and not on Professor Smit's article.[10]

## III.   THE ICC ARBITRATION IS "FOREIGN OR INTERNATIONAL"

The second statutory requirement under Section 1782 is that the tribunal must be foreign or international.   Although the Magistrate Judge intimated during oral argument that the ICC Arbitration was likely "foreign or international," *see* Hr'g Tr. 8:7-15, the Order states she is "not convinced" that the ICC Arbitration is foreign or international.   Order at 16. Ultimately, she did

---

[10] Indeed, the Magistrate Judge erroneously cites the wrong article by Professor Smit.   *See* Order at 11.   The *Intel* Court relied on, and extensively quoted, Professor Smit's 1965 article, not his 1998 article.   *See Intel*, 542 U.S. at 248 n.1, 258.

not reach this issue.   Order at 17, 18.   The ICC Arbitration is undoubtedly "foreign or international," as recognized by the parties' arbitration agreement, which provides that any dispute "shall be finally settled by *international* arbitration . . . under the Rules of Arbitration of the International Chamber of Commerce."  Contract, Art. 20.6.

According to the arbitration Terms of Reference, the arbitration agreement and arbitration is governed by the FAA *procedurally*.  TOR ¶ 64.  The FAA contains a broad definition as to what qualifies as an international or "foreign" arbitration agreement or award that is subject to review under FAA Chapter 2.   Pursuant to FAA § 202, agreements or awards that fall outside of the "foreign" category are those that "aris[e] out of such a relationship which is entirely between citizens of the United States," *and* which do not "involve[] property located abroad, [or] envisage[] performance or enforcement abroad, or [have] some other reasonable relation with one or more foreign states."  9 U.S.C. § 202.  Agreements and awards outside the purview of FAA § 202 are considered domestic and fall under the purview of FAA Chapter 1, 9 U.S.C. §§ 1-16.  *Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38, 45 (1st Cir. 2008).  Critically, "agreements and awards . . . are subject to the Convention not because they were made abroad, but because they were made within the legal framework of another country, e.g., *pronounced in accordance with foreign law or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction*." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1441 (11th Cir. 1998) (emphasis added).  Hence, on this issue as well the Magistrate Judge failed to analyze the existing authority, and instead intimate that the international arbitration at issue might not be international.

Consequently, the award is considered foreign *even if it is rendered by a tribunal seated in the United States*.  *Indus. Risk Insurers*, 141 F.3d at 1440 (holding in a case involving a

challenge to an award rendered in a private arbitration held in Tampa, Florida under the auspices of the American Arbitration Association, that "the provisions of Chapter 2 of the FAA govern an arbitral award granted to a foreign corporation by an arbitral panel sitting in the United States," even if that panel applies U.S. law); *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983) (same).   Thus, an arbitration can be "foreign or international" and still be seated in the United States.   As the statute was drafted, "section 1782 is not . . . limited to foreign, as distinguished from domestic, arbitrations. It provides for assistance to an 'international tribunal.' An international arbitral tribunal may also conduct its business in the United States. When it does, recourse to Section 1782 is available to it."   Smit, *American Assistance to Litigation in Foreign and International Tribunals*, 25 Syracuse J. Int'l L. & Com. at 6.   To hold otherwise would cause all parties to international arbitrations to avoid the United States as a situs for the arbitration, as they will risk being denominated domestic and lose their rights under international law.

As the Magistrate Judge recognized, the legal framework of the ICC Arbitration is clearly foreign and international.   *See* Order at 16-17.   None of the parties to the ICC Arbitration is a U.S. citizen and it concerns a dispute over a project located in Panama, pursuant to a contract governed by Panamanian law, with performance in Panama.   TOR ¶¶ 1-2, 13, 16, 62.   The substantive law applied is Panamanian law; the FAA only supplies the procedural law.   *Id.* ¶¶ 60, 64.   The procedural rules are international: the ICC Rules [Doc. No. 1-10], and the IBA Rules provide guidance for the tribunal [Doc. No. 8-5].   *Id.* ¶ 65.   Further, the tribunal consists of three international arbitrators from England, Spain, and Belgium.   *Id.* ¶ 3.

The Magistrate Judge noted that the cases finding for or against including a private arbitration under Section 1782 addressed arbitrations held in a foreign country.   Order at 17.   As

–22–

discussed, the location of the arbitration is not relevant to its legal framework, which together with the other characteristics of the arbitration determine where it is foreign or international.

## IV.   THE MAGISTRATE JUDGE MISINTERPRETED THE STATUTE BY RULING IT DOES NOT REACH DOCUMENTS IN PANAMA

The Magistrate Judge held that documents in Panama are "outside the jurisdictional reach of the statute," and therefore even if the ICC Arbitration were a foreign or international tribunal, GUPC, S.A.'s Application still would not meet the statutory factors of Section 1782.  Order at 20.  The holding misinterprets the statute because the statute's language has no such limitation on the discovery sought, as even the Magistrate Judge conceded.  *Id.* ("On its face § 1782 does not limit its discovery power to documents located in the United States.").  The location of the discovery sought is not a statutory factor under Section 1782; rather, the person from whom discovery is sought must reside or be found in the district of the district court ruling on the Section 1782 application.  *See In re Michael Wilson & Partners*, 2007 WL 2221438, at *2. HILL, on whom the subpoena was served, is found in this district.

Because Section 1782(a) provides that any document production granted must be "in accordance with the Federal Rules of Civil Procedure," documents located abroad can be reached by GUPC, S.A.'s proposed subpoena under Rule 45 of the Federal Rules of Civil Procedure. *Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047-MSK-MEH, 2010 WL 2135217, at *4 (D. Colo. May 25, 2010) ("As Section 1782 refers to the Federal Rules of Civil Procedure to fill in any procedural gaps, the Court looks to Fed. R. Civ. P. 45, which governs subpoenas.").

Rule 45 authorizes subpoenas commanding production of documents "in [the recipient's] possession, custody, or control[.]"   Fed. R. Civ. P. Rule 45(a)(1)(A)(iii).   "'Control' comprehends not only possession, but also the right, authority, or ability to obtain the documents." *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 476-77 (D. Colo. 2007); *Lumpkin v.*

*Clark*, No. CIVA 07-CV-02015-MSK, 2008 WL 2441986, at *9 (D. Colo. June 16, 2008)
("'Control' means a party's . . . practical ability to obtain the materials sought on demand.").
Thus, it is "immaterial that the documents sought may be located abroad, as '***the test for
production of documents is control, not location***.'" *Dietrich v. Bauer*, No. 95 Civ. 7051(RWS),
2000 WL 1171132, at *3 (S.D.N.Y. Aug. 16, 2000) (quoting *Marc Rich & Co., A.G. v. United
States*, 707 F.2d 663, 667 (2d Cir.1983) (citations omitted, emphasis added)).   Accordingly,
courts have compelled production under § 1782 of documents held by subsidiaries abroad. *E.g.*,
*Minis v. Thomson*, No. MISC. 14-91050-DJC, 2014 WL 1599947, at *5 (D. Mass. Apr. 18,
2014) (granting discovery of documents located in Tanzania); *In re Gemeinshcaftspraxis*, No.
Civ. M19-88, 2006 WL 3844464, at *5 (S.D.N.Y. 2006) (rejecting objection to discovery of
documents held abroad, noting that, as here, "[t]hey can easily be shipped to [the parent's]
headquarters . . . or perhaps accessed electronically").

Based on public documents, HILL recognizes little if any practical distinction with its
Panamanian office, and appears to control it directly.   HILL's corporate overview states that its
Panama subsidiary does not function separately, but acts as "an area office." [Doc. No. 13-3, at
2].   HILL announced that ACP's Project Management contract was awarded to "CH2M HILL, a
global full-service engineering, construction and operations firm," [Doc. No. 1-6, at 1], and in its
10-K filings and European Prospectus, HILL listed ACP as a "representative client[.]"  [Doc. No.
13-4, at 6; Doc. No. 13-5, at 28].   Moreover, although Ms. Donna Reese identifies herself as
"Document Control Manager of CH2M Hill Panama," Reese ¶ 1 [Doc. No. 10-1], she is
identified in public records as "Senior Document Control Manager, CH2M HILL Global
Document Management."   [Doc. No. 13-6].   Because HILL regards itself to be, and in fact
operates as, a global entity with a global document management system, any responsive

–24–

documents abroad may be reached through a Rule 45 subpoena, regardless of location.   The Magistrate Judge recognized this fact, noting that "CH2M-Hill does not dispute that it has the ability to electronically retrieve documents which might technically be in the possession of its foreign subsidiary."   Order at 18-19 (citing the representation of HILL's counsel at oral argument that: "[T]here were electronic documents that were put on a server. And I don't deny that the parent company has access to some of those[.]").

The Magistrate Judge decided not to follow the law discussed above governing Rule 45 subpoenas, but instead based her ruling on an inapposite case, *In re Application of Kreke Immobilien K.G.*, No. 13 Misc. 110 (NRB), 2013 WL 5966916, (S.D.N.Y. Nov. 8, 2013).  Order at 20.  *Kreke* is inapposite because unlike here, the discovery requests to Deutsche Bank in that case were unbounded in time and scope, and included requests for documents from the operations of a company prior to its acquisition by Deutsche Bank.  *In re Application of Kreke Immobilien K.G.*, 2013 WL 5966916, at *7 ("Kreke also wants a host of documents held by Oppenheim that predate its absorption into Deutsche Bank, most of which detail Oppenheim's past and current operations.").

Finally, even assuming for the sake of argument that GUPC, S.A.'s subpoena would not reach documents in Panama, HILL admitted there were potentially responsive documents in the United States and the Magistrate Judge neglected that GUPC, S.A.'s Section 1782 subpoena covered documents in the United States.  *See* Reese ¶ 8(a)(2) [Doc. No. 10-1] (listing potentially responsive documents in multiple locations in the United States).

## V.     DISCRETIONARY FACTORS FAVOR GRANTING THE APPLICATION

The Supreme Court in *Intel* enumerated several discretionary factors that "bear consideration in ruling on a § 1782(a) request:"

(1) whether the persons from whom the discovery is being sought are participants in the foreign proceeding;

(2) the nature and character of the foreign proceeding and the receptivity of the foreign tribunal to U.S. federal court judicial assistance;

(3) whether the request is an attempt to circumvent foreign proof gathering limitations; and

(4) whether the discovery sought is unduly burdensome.

*Intel*, 542 U.S. at 264-65; Order at 5.  As the Magistrate Judge noted, the discretion under Section 1782 is not boundless, and must be exercised in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in U.S. federal courts, and encouraging foreign countries by example to provide similar means of assistance to our courts.  Order at 21 (citation and quotation marks omitted); *see also In re Michael Wilson & Partners*, 2007 WL 2221438, at *3.

The Magistrate Judge determined there was "no reason to analyze these [discretionary] factors in depth given the court's findings on the statutory pre-requisites."  Order at 21.  Instead, the Magistrate Judge asserted that she would have declined GUPC, S.A.'s Application in any event under the discretionary factors "because it would circumvent the arbitration panel's discovery restrictions, the arbitration panel does not appear receptive to the discovery sought here, ACP is a party to the arbitration and has the right to access and control many of the documents subpoenaed from the third-party, and finally, because GUPC, S.A.'s requests are overly burdensome."  *Id.*  Given that the Magistrate Judge misinterpreted the statute and statutory pre-requisites, there was every reason to analyze the discretionary factors in depth.  As detailed below, the analysis, would weigh in favor of granting GUPC, S.A.'s Application.  Further, the Magistrate Judge had no evidence in front of her that the "arbitral panel is not receptive to the discovery sought," as the discovery process before the tribunal has not

commenced and the tribunal does not have any means to provide discovery from third parties. Discovery before the tribunal reaches only the parties before it.  Procedural Order No. 1 ¶¶ 3.4-3.10 [Doc. No. 8-8].

> **A.** **The Magistrate Judge's Conclusion that the Discovery Sought Is Unduly Burdensome Is Without Any Factual Foundation**

The Magistrate Judge analyzed only one discretionary factor, the alleged burdensomeness of the discovery sought.  According to the Magistrate Judge, GUPC, S.A.'s discovery requests were overbroad and overly burdensome because they asked for "165 million documents."  Order at 22.  A closer look at the statement, however, establishes that it has no foundation in fact.  The statement varies from the declaration of HILL's document control manager, and is based on an uncritical acceptance of HILL's counsel's testimony at oral argument.  HILL's document control manager, Ms. Reese, listed thirty locations in the United States (19) and around the globe (11) where potentially responsive documents exist, and stated that they amount to "approximately 1.6575 Terabytes of ESI and approximately 89 boxes of hard copy documents *spread throughout the above listed locations* . . . ."  Reese ¶ 8(a)-(b) (emphasis added).  At oral argument, Ms. Reeses' statement was transformed by HILL's counsel to "about 89 boxes worth" of physical documents "in Panama."  Hr'g Tr. 50:12-21.  Similarly, 1.6575 terabytes of electronically stored information became "165,000,000 pages" without any explanation or documentary proof of the ratio of a terabyte of information to a page.  Hr'g Tr. 60:7-8.  In the Magistrate Judge's Order, the purported 165 million pages changed to 165 million documents.  Order at 22.  GUPC, S.A. explained during oral argument that the 1.6575 terabytes number may be misleading because many of the documents sought likely are engineering charts, diagrams, and drawings, which electronically occupy more bandwidth or byte space than pages or records of that nature.  Hr'g Tr. 63:17-23.  For this reasons, HILL's counsel's calculation that 1.6575

terabytes equates to about 165 million pages is specious, as is his calculation that 165 million pages of responsive documents equates to "over 80,000 boxes."  Hr'g Tr. 60:8-11.  The Magistrate Judge simply and uncritically accepted these assertions by counsel.  Order at 22.  Moreover, the volume of discovery on a US$2 billion dispute arising out of a failure to make complete representations in the tender process is indeed not a deciding factor, and must be assessed in that context.

As discussed above, the Court has the discretion under the Federal Rules of Civil Procedure as well as under *Intel* to "trim" the requested discovery, such that any truly burdensome requests could be narrowed.  *Intel*, 542 U.S. at 264.  Indeed, in the normal course the scope of the document requests are negotiated between the parties, as are search terms, location of documents, and cost-sharing.  Moreover, to the extent any responsive documents are proprietary or confidential, a protective order can be entered.  If GUPC, S.A.'s request here for a subpoena is overbroad, then the correct result is to modify it or to provide instructions to GUPC, S.A. to do so along the lines of what the court would permit – not to reject entirely the request, thereby impairing the full disclosure of evidence in a case that centers on the lack of complete representations in the tender process.

### B.    The Magistrate Judge Misconstrued the IBA Rules and Terms of Reference

The Magistrate Judge concluded that the IBA Rules "expressly limit third-party discovery, requiring advance authorization from the panel of arbitrators for its collection and use," and that GUPC, S.A.'s Application directly conflicts with the agreed IBA Rules . . . [and] would not be welcomed by the arbitration panel . . . ."  Order at 23.  The Magistrate Judge's conclusion misconstrues the IBA Rules and the parties' Terms of Reference.

The IBA Rules do not require GUPC, S.A. to first approach the tribunal to authorize GUPC, S.A.'s Application.  The IBA Rules ***do not even control*** the ICC Arbitration; under

Paragraph 3.6 of Procedural Order No. 1, the Tribunal will be "guided by"—but will not be bound by—the IBA Rules.  Procedural Order No. 1 at 6 [Doc. No. 8-8].

IBA Rule 3.9 does not preempt resort to Section 1782.  To begin with, Rule 3.9 is discretionary upon the party, not mandatory: "the Party **may** . . . ask [the Tribunal] to take whatever steps are legally available[.]"  IBA Rule 3.9 (emphasis added).  Importantly, the plain language of the rule confirms that it is meant to increase access to documents by authorizing a tribunal, at the request of a party, to assist the party in obtaining discovery from a non-party, when the requesting party "cannot obtain the documents on its own."  *Id.*  The rule does not apply, however, when a party can obtain third-party discovery on its own through Section 1782.  *In re Application of Ecuador*, No. 4:11mc73–RH/WCS, 2011 WL 10618727, at *3 (N.D. Fla. Aug. 24, 2011) (concluding that "on its face, [IBA Rule3.9] is not available to [petitioner] to obtain documents" because the applicant could obtain documents "on its own" through a Section 1782 application).

Further, Section 1782 "does not incorporate an exhaustion requirement," and GUPC, S.A. "is not required to first seek discovery from [the ICC tribunal]."  *In re Ex Parte Application of Motorola Mobility LLC*, No. 12-CV-2618-BTM (WVG), 2013 WL 831554, at *2 (S.D. Cal. Feb. 1, 2013) ("The Supreme Court and other federal courts have refused to graft an exhaustion requirement on [Section] 1782 that would force litigants to seek information through a foreign court or from a foreign party before requesting third-party discovery from a district court under [Section] 1782.") (inside quotations and citation omitted); *In re Veiga*, 746 F. Supp. 2d 8, 24 (D.D.C. 2010) (stating that an attempt to more efficiently obtain use of relevant documents from a district court is not evidence of an intent to circumvent foreign discovery rules); *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992) (rejecting exhaustion requirement,

–29–

which would "impos[e] an additional burden" on applicants, "undermin[ing]" the statute's purpose of "providing efficient means of assistance"). Indeed, the Magistrate Judge's conclusion that GUPC, S.A. must first seek the tribunal's permission is contrary to *Intel's* holding that Section 1782 permits discovery before proceedings are "pending." *Intel*, 542 U.S. at 258-59. Here, GUPC, S.A. is acting "on its own" in lawfully pursuing discovery under Section 1782 because it cannot obtain the documents it seeks from HILL in the ICC Arbitration. HILL admits it is not a party in the arbitration, and the tribunal does not have jurisdiction over third-parties like HILL.

The Magistrate Judge's conclusion that the documents can be sought directly from ACP in the arbitration also is incorrect. Document production in the arbitration is very limited and much narrower than discovery under the Federal Rules of Civil Procedure and Section 1782; only specifically identifiable documents and categories of documents that are shown to be both relevant and material can be produced in the arbitration. *See* Procedural Order No. 1 ¶ 3.6; Whitesell ¶ 28. That is why ACP qualifies its assertion that the documents can be obtained from it in the arbitration with "if they [the Tribunal] accept GUPC, S.A.'s demands for production." *See* ACP Compl. ¶ 30. GUPC, S.A. cannot obtain documents in the ICC Arbitration without more specific information about them, which it does not have; and without the ability to pursue discovery pursuant to Section 1782, GUPC, S.A. cannot obtain the documents (or further relevant information) from HILL that would help it identify the documents it would demand from ACP in the ICC Arbitration. Moreover, "[i]n fact, it is contrary to legal precedent to argue that discovery may not be had from a non-party on the sole basis that the discovery has not been sought from a party in the foreign litigation." *Chevron Corp. v. Snaider*, No. 14-CV-01354-RBJ-KMT, 2015 WL 226110, at *7 (D. Colo. Jan. 15, 2015).

The limited discovery that arguably might be available to the arbitral tribunal under FAA § 7 (made available to FAA Chapter 2 pursuant to the residual clause in FAA § 208) is also of no relevance to GUPC, S.A.'s Application.  First, under FAA § 7, the subpoena would be limited to HILL appearing before the tribunal at an arbitration hearing to testify and bringing the documents with it.  *Kennedy v. Am. Express Travel Related Servs. Co.*, 646 F. Supp. 2d 1342, 1344 (S.D. Fla. 2009) (holding that "an arbitrator is not statutorily authorized under the FAA to issue summonses for pre-hearing depositions and document discovery from non-parties").  Second, the subpoena would be unenforceable because HILL is beyond the territorial reach of the U.S. District Court for the Southern District of Florida, the court that would enforce such a subpoena.  *See* FAA § 7 (providing that the arbitrators' subpoena can be enforced by the district court "in which such arbitrators, or a majority of them, are sitting"); *Dynegy Midstream Servs. V. Trammochem*, 451 F.3d 89, 95 (2d Cir. 2006) (holding that district court in New York could not enforce arbitrator's subpoena served on non-party in Houston, Texas).

Equally incorrect is the Magistrate Judge's conclusion that the arbitral tribunal would not be receptive to the discovery sought.  "Parties that apply for discovery under § 1782 enjoy a presumption in favor of foreign tribunal receptivity that can only be offset by reliable evidence that the tribunal would reject the evidence." *In re Veiga*, 746 F. Supp. 2d at 23-24; *In re Owl Shipping, LLC*, No. CIV.A. 14-5655 AET, 2014 WL 5320192, at *3 (D.N.J. Oct. 17, 2014).  HILL and ACP, as "the party resisting discovery," bear the burden of providing such reliable evidence and have not done so beyond conclusory assertions.  *See* HILL Opp'n at 14; ACP Compl. ¶ 33.   The Magistrate Judge's conclusion is based on nothing more than her misinterpretation of the IBA Rules and uncritical acceptance of the "grandiose document production" asserted by HILL's counsel, discussed above.  Order at 23.  Moreover, even if the

arbitral tribunal expressed disinterest in the discovery, its opinion would not be dispositive in rejecting GUPC, S.A.'s Application.  *See In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2010); *In re Application for Appointment of Comm'r*, No. C 11-80136 RS (MEJ), 2011 WL 2747302, at *5 (N.D. Cal. July 13, 2011) (noting that "even opposition by the international arbitral tribunal would not necessarily be determinative").

In sum, the Magistrate Judge's conclusions about the *Intel* discretionary factors are admittedly not based on any in-depth analysis but rather on HILL's counsel's conclusory assertions, and misinterpretation of the IBA Rules and Terms of Reference.  As such, her conclusions are erroneous as a matter of law.

## CONCLUSION

For the reasons stated above and in GUPC, S.A.'s briefs, the Magistrate Judge's Order should be vacated and GUPC, S.A.'s Application granted.

Dated: May 1, 2015                                        Respectfully submitted,
Washington, D.C.


                                                          s/ Francis A. Vasquez, Jr.
                                                          *Carolyn B. Lamm*
                                                          *Francis A. Vasquez, Jr.*
                                                          **WHITE & CASE** LLP
                                                          701 Thirteenth Street, N.W.
                                                          Washington, D.C. 20005
                                                          Phone: (202) 626-3600
                                                          Fax:    (202) 639-9355
                                                          Email: fvasquez@whitecase.com
                                                          *Counsel for Applicant GUPC, S.A.*


**SEYFARTH SHAW**                                         **KONCILJA LAW FIRM, P.C.**
Richard McKim Preston                                     Frances A Koncilja
975 F Street, N.W.                                        D & F Tower, 10th Floor
Washington, D.C. 20004                                    1601 Arapahoe St.
*Arbitration Counsel for Applicant GUPC, S.A.*            Denver, Colorado 80202-2038
                                                          Phone: (303) 675-0234
                                                          Fax:    (303) 675-0401
**BONELLI EREDE PAPPALARDO**                              Email: fkoncilja@koncilja.com
Antonio Crivellaro                                        *Counsel for Applicant GUPC, S.A.*
Via Michele Barozzi 1 20122
Milan, Italy
*Arbitration Counsel for Applicant GUPC, S.A.*


**ALEMAN CORDERO GALINDO**
**& LEE**
Alejandro Ferrer
2do piso, Humboldt Tower
Calle 53 Este, Marbella
Panama City, Panama
*Arbitration Counsel for Applicant GUPC, S.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2015, I filed a true and correct copy of the foregoing

**GUPC, S.A.'s OBJECTIONS TO MAGISTRATE JUDGE'S ORDER** with the Clerk of

Court using the CM/ECF system, which will send notification of such filing to the following:


Benjamin B. Strawn
Kenzo Sunao Kawanabe
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, CO 80202
Phone: (303) 892-9400
Fax:    (303) 893-1379
Email: tom.mcnamara@dgslaw.com
        ben.strawn@dgslaw.com
        kenzo.kawanabe@dgslaw.com

Phillip B. Dye, Jr.
James Lloyd Loftis
VINSON & ELKINS LLP
1001 Fannin Street, Suite 2500
Houston, TX 77002
Phone: (713) 758-2048
Fax:    (713) 615-5766
Email: pdye@velaw.com
        jloftis@velaw.com


 s/ Francis A. Vasquez, Jr.
*Francis A. Vasquez, Jr.*
**WHITE & CASE** LLP
701 Thirteenth Street, N.W.
Washington, D.C. 20005
Phone: (202) 626-3600
Fax:    (202) 639-9355
Email: fvasquez@whitecase.com
*Counsel for Applicant GUPC, S.A.*